No. 30,217.

NORA A. GARLITS et al., *Appellants,* v. MARGARET A. DICKSON et al., *Appellees.*

(10 P. 2d 861.)

Opinion filed May 7, 1932.

*R. E. Angle,* of Wichita, *Bert E. Church,* of Wellington, *J. R. Moreland* and *La Rue Moreland,* both of Eskridge, for the appellants.

*E. J. Taggart* and *John Bradley,* both of Wellington, for appellee Margaret A. Dickson.

The opinion of the court was delivered by

BURCH, J.: In form the action was one for partition of real estate commenced by six children against their widowed mother. For plaintiffs to prevail it was necessary to avoid a deed of land made by the father of plaintiffs to their mother, and recorded shortly after grantor's death, which occurred in November, 1915. The deed was of record, and the mother was in full possession and enjoyment of the land for almost fourteen years before the suit was commenced. The stated ground of the suit was that the deed had not been de-

livered in the grantor's lifetime. The cause of the suit was discovery of oil. Six children who would not join in harassment of their aged mother were made defendants. The Gypsy Oil Company was also made a defendant, but the action was subsequently dismissed as to the oil company. Issues were framed, and the case was tried by the court. The court stated findings of fact and a conclusion of law, pursuant to which judgment was rendered for defendants. Plaintiffs appeal. The findings of fact and the conclusion of law are appended to this opinion.

The notary public who prepared the deed, took the grantor's acknowledgment, and knew what occurred between husband and wife at the time the deed was executed, had become mentally incompetent, and could not testify at the trial. The statute forbade the wife to testify to conversations and transactions had personally with her deceased husband. By craft and deceit Ross Dickson succeeded in getting his mother to write with pen and ink at his dictation and to sign a statement that the deed was kept by Joseph W. Dickson in his possession in his own desk until his death. Being thus fortified and armed, plaintiffs commenced their action. Then they took their mother's deposition. Plaintiffs took a tortuous course with respect to this deposition, but the part played by the deposition at the trial need not be described or discussed.

The case was tried on a second amended petition which was verified, and which contained an allegation that the deed executed by Joseph W. Dickson was "void and of no force and effect, for the reason that it was not delivered during the lifetime of the grantor." Mrs. Dickson's answer denied this allegation of the petition, and alleged that the deed was delivered to her in the office of the notary public immediately after the deed was executed. Plaintiffs cite authorities to the effect that one who relies on a deed must prove delivery, and contend the burden of proof was on Mrs. Dickson to show delivery. The authorities are sound enough, but the contention is frivolous. Plaintiffs' case rested on their allegation that the deed was not delivered, and they were bound to prove the truth of the allegation or fail.

In the ninth finding of fact the court found a perfectly good delivery of the deed was made on the morning of the day before the grantor died. Plaintiffs contend this delivery could not be proved, because the grantee in her answer pleaded delivery at the time the deed was executed. Plaintiffs had a first-class opportunity to raise

this question at the trial, but they did not do so. There was no objection to the testimony on which the finding was based on the ground the testimony was outside the issues, there was no complaint that plaintiffs were taken by surprise by the testimony, and plaintiffs may not complain about it for the first time in this court.

The delivery just before the grantor's death was proved by two children who were at home at the time, Maggie Volk and Elvin Dickson. They, with the other children who stood by their mother, were made defendants, on plaintiffs' theory that they had an interest in the land. In their answer to the original petition, Maggie and Elvin, and members of their group, pleaded that at the time of their father's death their mother was owner in fee simple of the land. In their answer to the amended petition they pleaded execution and delivery of the deed in controversy, and alleged that by virtue of the deed their mother became fee-simple owner of the land.

After the amended petition was filed, and before the second amended petition was filed, Maggie and Elvin, and the members of their group, gave their mother a quitclaim deed of the land. The preamble of the quitclaim deed recited commencement of the lawsuit by plaintiffs; recited the contention of plaintiffs that the deed in controversy was not delivered, and that the children inherited interests in the land; recited the contention of defendants that the deed was delivered, and operated to convey to the mother a fee-simple interest in the land; and stated that the grantors in the quitclaim deed desired to remove, as far as they were able, the cloud cast by the lawsuit on their mother's title. The body of the deed recited a consideration of one dollar and love and affection of the grantors for their mother, and contained the operative words of a quitclaim deed.

In the answer to the second amended petition, Maggie and Elvin, and others of their group, denied the allegation of the second amended petition that their father was owner at the time of his death, and alleged that their mother was owner in fee simple.

Plaintiffs contend Maggie and Elvin were incompetent to testify, because of the statute, which reads:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly, from such deceased person, or when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner, or assignee of such deceased person, nor shall the assignor of a thing in action be allowed

to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; . . ." (R. S. 60-2804.)

Plaintiffs say the witnesses did not disclaim, and discuss the subject of disclaimer. What the witnesses did was much more effective to qualify them than a disclaimer.

Plaintiffs also say the witnesses were assignors of a thing in action, and discuss the meaning of the term "thing in action." The witnesses were grantors in a deed of land which they asserted they did not derive from their father and had no interest in, and were not assignors of a "thing in action."

The trouble with plaintiffs' position is, they seek to force on Maggie and Elvin a privity with their father which they steadfastly repudiated. The quitclaim deed did not in fact purport to convey or to assign anything. The preamble made it plain that the instrument was executed as a formal denial of plaintiffs' imputation of title, and was executed for the benefit of the mother's fee-simple title derived from her husband by his effective conveyance. The result is, the witnesses were as competent to testify as if the quit-claim deed described land which the grantors had acquired from a stranger to the family.

This opinion might well end here. It may be observed, however, that Margaret Dickson proved she had possession of the deed long before her husband's death, without revealing any communication or transaction had personally with her husband. It is not necessary to collate again the numerous decisions of this court to the effect that possession by the grantee of a deed absolute in form, duly executed and acknowledged by the grantor, is *prima facie* evidence of delivery which can be overthrown only by clear and convincing evidence.

This court is not concerned with credibility of witnesses or with conflicts in testimony resolved by the district court. Assignments of error not covered by the foregoing have been considered, and are without merit.

The judgment of the district court is affirmed.

## FINDINGS OF FACT.

1. The court finds that Joseph W. Dickson and Margaret A. Dickson were husband and wife, and that they lived together as husband and wife until the time of the death of the said Joseph W. Dickson, which occurred on the 25th day of November, 1915.

2. That Joseph W. Dickson and Margaret A. Dickson were the parents of twelve children, namely, the six plaintiffs, Nora A. Garlits, Ross Oscar Dickson, Marion Evert Dickson, Nina Elnore Hill, Glenn I. Dickson, Robert Ernest Dickson, and the six defendants, Claude Dickson, Joseph Earl Dickson, Constance Ora Lucinda Owens, Maggie Glorain Volk, Annie Leona Ericsson, and Clifford Elvin Dickson. That all of said twelve children are living, and they, together with their mother, the defendant, Margaret A. Dickson, are the sole heirs at law of Joseph W. Dickson, deceased.

3. Joseph W. Dickson and his wife, Margaret A. Dickson, resided for many years on the northwest quarter of section 17, township 35, south, range 3, west of the sixth P. M., in Sumner county, Kansas. During the lifetime of Joseph W. Dickson, the record title to this real estate appeared in the name of Joseph W. Dickson. The ownership of this real estate is the subject of this controversy at this time.

4. On December 11, 1914, Joseph W. Dickson and his wife, Margaret A. Dickson, went to Caldwell, Kan., to the office of H. C. Keeling, a notary public of Sumner county, Kansas. At the request of Joseph W. Dickson, a deed of general warranty, conveying to Margaret A. Dickson the northwest quarter of section 17, township 35, south of range 3, west, in Sumner county, Kansas, was prepared by H. C. Keeling. This deed was executed by Joseph W. Dickson and the execution thereof acknowledged by Joseph W. Dickson before H. C. Keeling, notary public, on the 11th day of December, 1914.

5. The deed from Joseph W. Dickson to his wife, Margaret A. Dickson, conveying the above real estate to her, was filed for record in the office of the register of deeds of Sumner county, Kansas, November 29, 1915, at 10 o'clock a. m., and was duly recorded in Book 132 of Deeds, at page 392.

6. Joseph W. Dickson and Margaret A. Dickson had as one of the articles of furniture in their home, a home-made desk, containing two secret drawers. One of such drawers contained the property of the husband, and the other the property of the wife. The deed was kept in the drawer belonging to Margaret A. Dickson from the date of its execution until the day before Joseph W. Dickson's death, when it was taken from such drawer, and subsequently returned to the drawer, where it remained until it was removed from the desk and sent to the register's office for recording. Both husband and wife had access to the desk and to the secret drawers of the desk, and each knew of the property belonging to the other, but their papers were kept separately, each having a secret drawer.

7. The deed remained in the secret drawer of Margaret A. Dickson during all of the time from its execution to its recording, except as it was taken out by her.

8. Of the twelve children, only two, Maggie Volk and Elvin Dickson, were residing at home when their father, Joseph W. Dickson, died. The other ten

children had attained an age when they had acquired homes of their own and were making their own way in the world.

9. In the morning of the day prior to Joseph W. Dickson's death Mr. Dickson called to his bedside his two children, Maggie Volk and Elvin Dickson, and while these two children were in the room, he asked Mrs. Dickson, his wife and the mother of the children, to get the deed. Margaret A. Dickson got the deed and handed it to Joseph W. Dickson, who handed it back to Margaret A. Dickson, and Joseph W. Dickson said at the time, "See, children, this is a deed to the home place here, I have given it to mother, it is hers as long as she wants it."

10. Two days after the death of Joseph W. Dickson, which was Saturday, the 25th day of November, 1915, the deed was taken by Mrs. Dickson from the desk to the office of H. C. Keeling, and there placed in an envelope and forwarded to the register of deeds for recording.

11. The six defendant children claim no interest in the real estate, the subject of this suit, having on December 30, 1929, by quitclaim deed, conveyed any interest they might have to their mother, Margaret A. Dickson, to remove the cloud cast upon the title of their mother by virtue of this suit.

12. Since the death of Joseph W. Dickson, Margaret A. Dickson has, with the knowledge of all the children, received all the rents and profits from the land described in the deed, has had possession of the land, has paid the taxes on the land, has executed oil and gas leases and oil and gas royalty conveyances, and has alienated the premises by mortgages.

13. Margaret A. Dickson had manual control over the deed in question at all times from its execution, and it remained in her secret drawer in the family desk, with the knowledge of the grantor, Joseph W. Dickson.

14. The deed was executed and delivered and came into the possession of Margaret A. Dickson shortly after its execution, and was again delivered to her by Joseph W. Dickson on the day before his death, and conveyed to Margaret A. Dickson a title in fee simple. No trust estate was created by the deed.

15. H. C. Keeling, the notary public who prepared the deed, is mentally incompetent and unable to appear as a witness at the trial of the case, he being adjudged insane by the order of the probate court of Sumner county, Kansas.

16. As Joseph W. Dickson is dead, the testimony of Margaret A. Dickson, as to any transactions or conversations with Joseph W. Dickson concerning the deed, is not considered by the court in arriving at these findings.

### CONCLUSION OF LAW.

The court concludes as a matter of law that Joseph W. Dickson, at the time of his death, was not the owner of the real estate described in the deed of December 11, 1914, said deed being a present, binding and operative conveyance in fee simple to Margaret A. Dickson, and the property described in said deed was the property of Margaret A. Dickson, and she is the owner of the entire fee in said northwest quarter (NW¼) of section seventeen (17), township thirty-five (35) south, range three (3) west of the sixth P. M. in Sumner county, Kansas.