No. 36,042

Roy Lish, *Appellee,* v. Minnie Lish Wehmeyer (Formerly Minnie Lish), *Appellant,* and T. W. Wehmeyer, Her Husband, et al., Defendants.

(147 P. 2d 712)

Opinion filed April 8, 1944.

*Austin M. Cowan* and *Robert H. Nelson,* both of Wichita, argued the cause, and *C. A. McCorkle, W. A. Kahrs* and *Henry L. Butler,* all of Wichita, were on the briefs for the appellant.

*J. Roderick Mayall,* of Wichita, argued the cause for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action for partition of real estate and for a money judgment in the sum of $605.80 for taxes and repairs on the property involved. Plaintiff sought a lien on defendants' interest for that amount. Defendants' answer denied plaintiff had an interest in the property and sought an accounting and a money judgment against the plaintiff in the amount of rents plaintiff had collected from the premises during a period of approximately sixteen years.

The court decreed plaintiff had a one-half interest in the property, but gave one of the defendants, Minnie Lish Wehmeyer, a lien on plaintiff's interest in the amount of $120.53, that being the amount the court found the accounting disclosed defendant was entitled to receive. From that judgment the defendant, Minnie Lish Wehmeyer, appeals.

The other defendant was T. W. Wehmeyer, appellant's husband.

We shall refer to the parties as plaintiff and defendant. Defendant relies upon an escrow agreement. Plaintiff admits that agreement was executed. He contends the agreement was not carried out but was materially modified and entirely abandoned as an escrow agreement. He relies upon the subsequent acts and conduct of the parties over a period of approximately sixteen years including the execution and delivery of a warranty deed from defendant to him which was of record for that period of time.

The general facts indicating the nature and origin of this action and the defense thereto are:

Plaintiff and defendant were formerly husband and wife; a divorce was granted to the defendant April 3, 1925; defendant in this action was awarded the property in question, a residence in the city of Wichita; thereafter and on May 28, 1925, before the decree of divorce became final, the parties executed a mortgage to the Southwest Building and Loan Association of Wichita, which will be referred to as the loan company, upon the property in the sum of $1,750; the mortgage was payable in monthly installments of $22.23; it appears the loan company required plaintiff's signature to the mortgage; the record does not disclose, but it is suggested plaintiff's signature was required because the divorce decree had not yet become final; defendant found herself unable to make the payments on the mortgage and went to her former husband for help; she borrowed $112 from him to make payments, including taxes, on the premises; defendant gave plaintiff a second mortgage in that amount on the property; thereafter and on Decemeber 21, 1925, plaintiff and defendant entered into a written contract concerning the property; the pertinent provisions thereof were that plaintiff agreed to pay the mortgage to the loan company; in consideration of such payment defendant was to execute and deliver to plaintiff a quitclaim deed for an equal undivided one-half interest in the property; the agreement provided the quitclaim deed should be placed in escrow in a named bank with instructions to deliver the deed to plaintiff upon the presentation of a receipt by him showing the mortgage had been paid and released; the agreement also provided that if plaintiff failed to make the mortgage payments the escrow holder was to return the deed to the defendant; it was also agreed the second mortgage above mentioned was to be released by plaintiff; while plaintiff conceded the agreement was signed he testified he did not remember ever having received a copy thereof and that the

contract was not placed in escrow; plaintiff never received the quit-claim deed from the defendant and defendant does not contend she ever executed it; defendant admits she never placed the written contract or any deed in escrow as provided by the escrow contract.

Plaintiff claimed the purported escrow agreement was abandoned. The record discloses: That instead of defendant giving plaintiff a quitclaim deed as provided in the escrow agreement of December 21, 1925, that thereafter and on January 14, 1926, plaintiff executed and delivered a quitclaim deed for the property to the defendant and that such deed was recorded by the defendant personally on January 22, 1926 (it will be observed that quitclaim deed was executed some twenty-four days after the date of the alleged escrow agreement); that quitclaim deed was an unqualified conveyance of all of plaintiff's interest in the property; on January 18, 1926, the defendant executed a *warranty deed,* not provided for in the escrow agreement, wherein she conveyed a present undivided one-half interest in the property to the plaintiff; the warranty deed provided the grantee, plaintiff, assumed and agreed to pay the mortgage held by the loan company; plaintiff recorded that deed on January 22, 1926 (it is the deed upon which plaintiff relies); in 1932 defendant gave a mortgage on her undivided one-half interest to a party in Oklahoma; it is conceded the loan company mortgage was paid off in 1939 and that the note and mortgage were delivered to the plaintiff; no steps were taken by the defendant to cancel and set aside the warranty deed and no objections were made thereto by her until immediately preceding the filing of the instant action on December 11, 1941; defendant was married to T. W. Wehmeyer in the fall of 1926.

The trial court made extensive findings of fact concerning the dealings and transactions of the parties during the approximately sixteen-year period, including the payment of taxes and the making of repairs on the building by the plaintiff and the application of rentals from the building on the mortgage loan. The court found the contemplated escrow agreement was mutually abandoned and that the quitclaim deed from plaintiff to defendant, not provided for in the escrow agreement, was given for the purpose of and did restore to the defendant, Minnie Lish Wehmeyer, all rights, if any, in the property which the plaintiff, Roy Lish, acquired by reason of the escrow agreement. The court further found that, in consideration of the subsequent delivery of the warranty deed to the plain-

tiff, the plaintiff released his second mortgage on the premises. The court also found that all payments made by the plaintiff upon the mortgage and for taxes and repairs were made in reliance upon the subsequent warranty deed which was executed and delivered to him on January 18, 1926, and recorded January 22, 1926.

Defendant contends the evidence does not support the finding that the escrow agreement dated December 21, 1925, was abandoned. While the conduct of the parties subsequent to December 21, 1925, is not wholly out of harmony with all the terms of the escrow agreement it would be difficult, if not impossible, to say the finding of the court was not amply supported by the evidence. It is admitted the quitclaim deed from defendant to plaintiff, provided for by the escrow agreement, was never executed. About three weeks elapsed and then an entirely different quitclaim deed was executed. It was a deed from plaintiff to defendant, not required or contemplated at all by the escrow agreement. Defendant personally recorded the latter deed on January 22, 1926. That quitclaim deed was notice to the world that plaintiff had conveyed all of his interest in the property, whatever it might be, to the defendant. That, of course, included any interest plaintiff might have under the alleged escrow agreement, assuming it had been deposited in escrow, which it was not.

It will be observed the quitclaim deed to the defendant and the warranty deed to the plaintiff were recorded by the respective grantees on the same date, to wit: January 22, 1926. Defendant concedes she had the original and one copy of the escrow agreement. She says she intended at the time of its execution to deposit the agreement in the bank. She admits, however, that she never did so. She concedes that still later, on January 18, 1926, she executed the warranty deed to the defendant. That was approximately one month after the execution of the escrow agreement. That deed, as previously indicated, was not in conformity with the escrow agreement. It conveyed not a future and conditional interest in the property to the plaintiff but a present undivided one-half interest, subject to the mortgage loan which plaintiff, in that deed, assumed and agreed to pay. Defendant said she meant to deposit that deed in escrow with the agreement, but that the warranty deed disappeared from her premises. She charged plaintiff with stealing it. The evidence on that point was conflicting and the court resolved that issue against the defendant. The fact remains, so far as this

record discloses, defendant made no demand upon plaintiff for the warranty deed during a period of almost sixteen years. Nor did she at any time deposit the escrow agreement. In 1932, with the record showing a one-half interest in her and a one-half interest in plaintiff, subject to the loan company mortgage, she mortgaged her undivided one-half interest in the property to a party in the state of Oklahoma. Payments of taxes and on the loan were made by plaintiff until the note and mortgage were paid and released to him in 1939. In 1930 he placed a new roof on the building for which he paid. The escrow agreement did not bind him to make repairs. We think the trial court had ample evidence from which to conclude the escrow agreement was mutually abandoned.

The defendant also argues there was no delivery of the warranty deed to the plaintiff. . The plaintiff testified he obtained that deed from the office of Harold Blake, his attorney. The defendant did not deny she had been in Blake's office. No inquiry was made during the trial as to who was present in the office while she was there or concerning any other circumstances which might disclose that Blake was not authorized to deliver the deed. It is true that in the warranty deed plaintiff assumed the mortgage but the deed was a present grant of title. It contained no provision that it be placed in escrow or that plaintiff would obtain a one-half interest in the property only after he had paid the mortgage loan. Moreover it was recorded by plaintiff within four days after its execution. As previously stated defendant made no objection to that deed or to its recording until approximately sixteen years thereafter. She charged plaintiff with stealing the deed from her premises. It appears the trial court did not believe such testimony. The transaction was almost sixteen years old and Harold Blake was not called as a witness by either party to testify concerning the delivery of the warranty deed. It is entirely probable he had no independent recollection of the matter after so many years had passed or one of the parties undoubtedly would have subpoenaed him as a witness. Obviously we shall not assume an attorney whose integrity stands unchallenged would deliver a deed without authority to do so. In *Garlits v. Dickson,* 135 Kan. 283, 10 P. 2d 861, it was said:

"It is not necessary to collate again the numerous decisions of this court to the effect that possession by the grantee of a deed absolute in form, duly executed and acknowledged by the grantor, is *prima facie* evidence of delivery which can be overthrown only by clear and convincing evidence." (p. 286.)

We think there was abundant testimony for the trial court's finding the warranty deed had been delivered to plaintiff. In addition to that it was recorded for almost sixteen years and not challenged until just prior to the filing of this action. The court, of course, was justified in considering also that fact in reaching its conclusion on the question of the intention of the parties on the subject of delivery. The evidence designed to refute delivery clearly did not convince the trier of the facts and we cannot say it should have been convincing.

Defendant asserts the trial court erred in the accounting. The accounting consisted in the balancing of accounts between the parties, cotenants of the building. It involved the payment of taxes over a period of approximately sixteen years most of which had been made by plaintiff. It involved repairs made on the building by plaintiff and the loan company. It involved the proper application of rentals from the building which had been collected by both parties over different periods of time and by the loan company over part of the period. Portions of the facts were covered by stipulation of the parties. A careful review of the record discloses no substantial error in the accounting. There is a small item in the accounting for which plaintiff might not have been entitled to credit. Plaintiff insists the point was never presented to the trial court and is raised for the first time on appeal. We find no denial of this contention in defendant's reply brief. It is well established that where it does not affirmatively appear a question raised on appeal was presented to and determined by the trial court, this court does not consider it on review. (*Anderson v. Shannon,* 146 Kan. 704, 73 P. 2d 5, 114 A. L. R. 200.)

Defendant also argues plaintiff's claim for moneys paid out on taxes and repairs was barred in that such payments were made more than three years prior to the filing of the instant action. The contention cannot be sustained. This was an accounting between cotenants. The amount of plaintiff's claim, assuming any part thereof would have been barred in an action for affirmative relief, was properly allowed as an offset to defendant's claim against plaintiff for rentals on the property which plaintiff and the loan company had applied on the loan company mortgage and in which rentals plaintiff had only a one-half interest. Manifestly plaintiff's claim for taxes and repairs on the building was properly credited to him in determining the balance he was required to pay on the mortgage

debt which he assumed and agreed to pay in the warranty deed. The accounting disclosed that amount to be $120.53. Judgment for that amount was rendered against plaintiff and it was made a lien on plaintiff's undivided one-half interest in the property. We find no error in the judgment rendered.

In view of the conclusions reached with respect to the foregoing contentions it is unnecessary to treat a further contention made by the defendant.

The judgment is affirmed.