No. 36,175

Mabel Lechleitner, *Appellee,* v. C. C. Cummings, *Appellant.*

(152 P. 2d 843)

Opinion filed November 4, 1944.

*Dallas W. Knapp,* of Coffeyville, argued the cause, and *Guy M. Cowgill, Arthur C. Popham* and *Sam Mandell,* all of Kansas City, Mo., were on the briefs for the appellant.

*Aubrey Neale,* of Coffeyville, argued the cause, and *Raymond Belt,* of Coffeyville, was on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action by a widow to recover damages for the wrongful death of her husband in an automobile collision case. Plaintiff prevailed and defendant appeals.

The jury returned a verdict in the sum of $3,500 and made special findings of fact. Plaintiff moved to strike certain special questions and answers thereto and also for a new trial. The latter motion was based upon the grounds of alleged erroneous rulings of the court and an inadequate verdict. Defendant moved for judgment on the special findings. The court overruled defendant's motion and plaintiff's first motion, but granted a new trial upon the ground it was dissatisfied with the general verdict and the answers to special questions.

Appellant contends the trial court erred in overruling his motion for a directed verdict at the close of appellee's evidence. The parties

and the trial court treated the motion as a demurrer. Under the circumstances we shall do likewise. The grounds of the motion, in substance, were that appellee's evidence proved (1) no negligence of appellant, and (2) no causal connection between the collision and the death of appellee's husband.

Was there sufficient evidence of appellant's negligence to require the submission of that issue to the jury? Appellee's evidence, construed in the light most favorable to her, as it must be on a demurrer, in substance, disclosed:

The automobile collision occurred on U. S. highway 166 at a point approximately three-fourths of a mile west of the city limits of Coffeyville; the accident occurred about 5.00 p. m. on January 23, 1943; it was a clear day and it was light; decedent was driving his automobile in a westerly direction and on the north side of the highway; appellant was behind him and was traveling in the same direction; the highway at or near the point of collision was fairly level; from that point there was a clear view of the highway looking west for approximately two miles although there was a slight dip in the highway at a point some distance to the west; neither the exact distance of the dip from the point of collision nor its depth was disclosed by appellee's evidence; there was a clear view of the highway to the east from the point of collision for a distance of approximately one-half of a mile; the decedent was traveling at the rate of twenty miles per hour when he observed a parked car on the highway; it was on the north side of the center of the highway; he began reducing the speed of his car as he approached the parked car; he had slowed down to approximately ten miles per hour at the time appellant ran into his car from the rear; the decedent died five days after the collision but some additional facts pertaining to the manner in which his death occurred are reflected by a conversation which took place between the decedent and the witness, Walter Johnson, marshal of the court of Coffeyville, who arrived at the scene of the accident promptly after it occurred; this conversation took place at the scene of the accident and in the presence of appellant.

The material testimony of the witness, Johnson, was, in substance, as follows:

Decedent told him he was driving twenty miles per hour and reduced his speed to ten miles per hour as he approached the parked car ahead of him and that appellant's car rammed into his car from the rear; that decedent stated he slowed down because of the parked

car ahead of him and an automobile which was approaching from the west; the witness, Johnson, heard the decedent say to appellant, "You must have been driving awfully fast;" the witness, Johnson, stated that appellant made no comment in his presence concerning the foregoing conversation and made no explanation as to how the collision occurred.

The witness, Johnson, further testified that during this conversation Mrs. Lechleitner, widow of the decedent, and a daughter came to the scene of the accident and Mrs. Lechleitner said that appellant must have been driving awfully fast and appellant replied, "about 80 or 90," but that he did not say it like he meant it, but as though he were "kidding" about his speed; he, Johnson, remarked to appellant that it looked as though appellant was at fault and that appellant said, "I wouldn't know about that."

Concerning the condition of decedent's car after the collision Johnson testified:

"My best recollection is that the back end of the Lechleitner car was caved in, the bumper was bent, the tail light knocked off and the left rear fender was crushed against the body of the car, and that the Cummings car had the right headlight, bumper and right front fender bent."

The record discloses the following question and the answer of Mrs. Lechleitner:

"Q. Just state what was said at that time while Mr. Cummings was there. A. That is what I am going to say. He [Mr. Lechleitner] said, 'This fellow hit me.' I turned and asked Mr. Cummings, 'Do you have any brakes?' He said, 'Yes, I have brakes,' and I said, 'Well, how fast were you going?' He said, 'About 80 or 90 miles,' just like that. I said, 'You certainly were going the speed limit because I have driven a car too long and I know you can handle it if you had your car under control.'"

Mrs. Lechleitner was then asked—"Did he [Cummings] say anything?" The answer to the question was not responsive and was stricken. Mrs. Lechleitner further stated that she observed skid marks made by the Cummings' car on the pavement a distance of sixty or seventy feet. She also testified that the light on the rear end of Mr. Lechleitner's car which was connected with the brakes was operating on the morning of the accident.

The daughter of the deceased testified in part as follows:

"I stayed in the car, mother got out. I could see the rear end of dad's car and could see all of the Cummings' car from where she parked our car. When mother got out dad and Mr. Cummings and a Mr. Johnson were standing there talking. I heard mother ask dad what had happened and he said, 'This

fellow hit me,' and later I heard dad ask Mr. Cummings if he saw him and Mr. Cummings said he had seen him, and dad asked him why he hit him and Mr. Cummings did not make a reply."

The material part of appellant's testimony, in substance disclosed: He saw decedent's car ahead of him approximately one-half mile before the collision; he was following that car along the north side of the center of the highway; he attempted to pass decedent's car; when he started to pass he could not see whether a car was approaching from the west; he did not look to see whether a car was coming from the west before he started around decedent's car; he could not see to the west until he pulled out and started to stop; he was approximately 30 feet from decedent's car when he started to stop; when he saw the car coming from the west he attempted to turn to his right and to pass decedent's car on the north but was unable to do so.

If there is any question concerning the sufficiency of appellee's evidence to establish a prima facie case of appellant's negligence the deficiency was supplied by appellant's own testimony. Where a party having demurred to evidence fails to stand upon an adverse ruling and introduces testimony which supplies an element or elements essential to a cause of action or defense the ruling on the demurrer, if in fact erroneous, is cured and cannot be relied upon as error. (*Hayes v. Reid*, 145 Kan. 51, 64 P. 2d 19; *Rush v. Brown*, 153 Kan. 59, 109 P. 2d 84.)

Appellant also argues his demurrer to appellee's evidence should have been sustained for the reason appellee's evidence disclosed decedent was guilty of contributory negligence. The demurrer did not embrace that contention. Insofar as it related to the subject of negligence the demurrer was lodged solely upon the ground—". . . plaintiff has shown no acts of negligence against the defendant . . ." It follows the alleged error will not be considered on review. (*Lish v. Wehmeyer*, 158 Kan. 339, 344, 147 P. 2d 712.) In passing we may pause to observe that if the contention had been made it probably would not have been sustained. (*Curtiss v. Fahle*, 157 Kan. 226, 139 P. 2d 827.)

Did appellee's evidence establish a causal connection between the collision and the death of Lechleitner? Decedent was a boilermaker inspector for the Missouri Pacific Railroad Company at Coffeyville. There was no testimony of any heart ailment or other illness prior to the collision. There was ample testimony concerning his good

health prior to the collision. His time record showed only one day's absence from duty in 1942 and no absences due to illness during the last seven years. Concerning his condition at about 8:00 p. m. on the day of the accident, January 23, 1943, Mrs. Lechleitner testified:

"After we got home that evening and after I got supper and after supper Mr. Lechleitner sat down and picked up the paper to read, and he was sitting there with the paper up and all at once the paper dropped and his arms dropped and his head went back, and he turned white, and his lips quivered, and I went over to him and rubbed his arms. This had never happened before. I called Dr. Coyle and the doctor came that evening. After the doctor left, Mr. Lechleitner went to bed. He went to work the next day. From that day on he worked every day until the 28th. I would take him in the morning and get him in the evening. After the 23rd, he didn't eat and he suffered all of the time. He was ordinarily a hearty eater."

Mr. O. A. Clark, chairman of the boilermakers' organization of the Missouri Pacific Railroad Company, in substance, testified:

He saw decedent at approximately 1:00 p. m. on January 28, 1943, and was with him from about 2:00 p. m. until the time of his death at about 3:45 p. m.; they had walked practically the full length of the roundhouse; they were standing and conversing; he felt something take hold of his arm; he looked around and decedent was sinking to a stooping position; he slumped and fell down; he gave him first aid as best he could; the foreman got a stretcher and called an ambulance; he thought Lechleitner was dead when placed in the ambulance; he did not hear him utter a sound.

It will serve no useful purpose to narrate at length the testimony of Dr. E. G. Coyle. The doctor, in substance, testified: He examined the decedent at approximately 8:00 p. m. on January 23, and found him to be suffering from a coronary trouble; during the autopsy he made he found two broken or fractured ribs on the left side about two inches from the spine; the breaks were what are called green stick fractures; those are breaks which are not complete; the pericardium was filled with blood; that condition was caused by a rupture of the heart; he had an opinion as to what caused the death; his opinion was based upon his examination made the evening of January 23 and upon the autopsy which he performed on January 28; it was his opinion decedent suffered from a coronary occlusion or thrombosis which was caused by the automobile collision; the accident was responsible for his death.

The opinion of Doctor Coyle concerning the cause of death was

given in response to a hypothetical question. It is now argued the question did not contain all of the essential evidentiary facts. The objection made to the question at the time of trial was not upon the grounds now urged. The objection was that the question called for "speculation and the conclusion of the witness." To be sure the answer was the doctor's conclusion, that is, his opinion as to the cause of death. It was based upon his examination and the autopsy he personally had performed. Manifestly the answer was not objectionable upon the ground it constituted a conclusion. Nor was the doctor's testimony speculative. It was his positive opinion.

The order overruling appellant's demurrer to appellee's evidence is sustained.