No. 22,991.

E. M. Artwein et al., *Appellants*, v. J. A. Link and A. L.
Reese, *Appellees*.

### SYLLABUS BY THE COURT.

1. Petition—*On Written Contract—Allegations Relating to Cotemporaneous Oral Contract Properly Stricken Out.* The allegations of a petition setting out an oral contract made cotemporaneously with a written one, may be stricken out on motion where, by the oral contract, the terms of the written one are sought to be added to or altered, and no new or additional consideration is alleged.

2. Contract—*Sale of Oil and Gas Lease—Expected Profits Not an Element of Damages for Breach of Contract.* Profits expected to be realized from the sale of oil and gas leases on account of an oil and gas well being drilled on or near them, cannot be recovered as damages from those failing to drill the well, where the contract does not show that the parties contemplated that such loss of profits might be recovered as damages upon a breach of the contract.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed February 12, 1921. Affirmed.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellants.

*C. A. Matson,* and *I. H. Stearns,* both of Wichita, for the appellees.

The opinion of the court was delivered by

Marshall, J.: The plaintiffs brought this action to recover damages for the failure of the defendants to drill an oil and gas well on certain property. A motion to strike out certain parts of the petition was allowed, and after those parts were stricken out, a demurrer to the petition was sustained. The plaintiffs appeal and complain of each order.

The petition alleged that the plaintiffs owned a large acreage of oil and gas leases in Washington county, Ark., and that they "entered into a contract [in writing] with defendants whereby they assigned certain of said leases to defendants in consideration of the agreement of defendants to erect an oil and gas derrick or rig complete on a certain part of

said leases so assigned on or before June 1st, 1917, and to thereafter commence drilling an oil and gas well, the same to be completed by October 11, 1918, to a depth of 3,000 feet unless oil and gas in paying quantities were reached at a lesser depth."

1. The following allegations and one other that referred to an oral contract or understanding were stricken out:

"That at the time of the execution of said contract, Exhibit 'A,' and of the assignment to defendants of the leases therein set out, it was mutually orally agreed and understood between the parties to said contract, and was within the contemplation of the parties thereto that the parties of the first part owned and held other leases in said county which they expected to sell in reliance on the increased value given thereto by the compliance with the terms of said contract by second parties, and also that first parties were then engaged in the procuring of and would procure other leases in said county which they expected to sell in reliance on the increased value given thereto by the compliance with the terms of said contract by second parties thereto. That it was understood and agreed by and between the parties to said contract and was within their contemplation that the consideration to first parties for their execution thereof and for the assignment by them to second parties of the leases therein described was the increased value which would accrue to such other leases that first parties might then own or might thereafter procure as a result of the compliance with the terms of said contract by second parties thereto. And second parties to said contract well knew, anticipated and contemplated when said contract was entered into as aforesaid that the first parties thereto then owned, and would procure, other leases in said county whose value then depended and would depend upon their compliance with the terms of said contract and that a breach by them of the terms of said contract would result in great damage to said first parties, such damage being the difference between the value of such leases then owned, or to be procured by first parties, if said contract was fully complied with, and their value if said contract was not complied with and was breached.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"That all of said leases so described in Exhibits 'E' and 'F' were procured at great expense in time and money, and in reliance on the commencing of a well by defendants according to said contract, Exhibit 'A,' and in reliance on the performance of said contract by defendants. That at the time said contract, Exhibit 'A' was entered into, defendants well knew and contemplated that first parties thereto would thereafter procure such additional leases, at great expense to them and in reliance on the performance of said contract by them, and that said first parties would suffer great damage if said contract was breached by them.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"That at the time of the execution of said contract, Exhibit 'A,' it was

the intention of first parties thereto, as was well known by the defendants, and contemplated by all the parties thereto, that said first parties would procure leases in said county in addition to those then owned and held by them and that after defendants had commenced the drilling of a well in conformity with the terms of said contract, and during the drilling of such well, and prior to the time when any rentals might become due to lessors under any of said leases, they would sell off all such leases at the increased values accruing to such leases resulting from the drilling of a well in said county in conformity with the terms of said contract. That the profit resulting from such sale of such leases was the consideration which induced said parties to enter into the contract, Exhibit 'A,' as was well known to defendants."

These allegations, without alleging any new or additional consideration, and without alleging duress, fraud or mistake, attempted to lay the foundation for the introduction of oral evidence to prove an addition to or alteration of the terms of the written contract. Such evidence would be inadmissible. (*Fontron v. Kruse,* 103 Kan. 32, 38, 172 Pac. 1007, and cases there cited.) Since evidence could not be introduced to prove any of these allegations, it was proper to strike them out.

2. With the quoted allegations stricken out, the petition attempted to allege a cause of action for damages for breach of the contract. The allegation of damages was—

"That because of defendants' breach of said contract, and the resulting loss in value of all of said leases, plaintiffs were and are damaged in the average sum of $10.00 per acre on all acreage covered by said leases, a total damage of $95,610.00."

No other damages were alleged. There was nothing in the contract to show that the parties to it contemplated that loss of profits might be recovered on its breach. The petition was drawn on the theory that the plaintiffs could recover the loss sustained by reason of their failure to sell the leases retained by them at a greatly enhanced price which could have been realized if the well had been drilled. In other words, the plaintiffs sought to recover damages for loss of profits on account of the failure of the defendants to drill the well.

In *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091, the court said:

"Before one may recover damages for loss of profits to an established general business, occasioned by the wrongful acts of another, it must be made to appear that the business had been in successful operation for such period of time as to give it permanency and recognition, and that

it was earning a profit which may reasonably be ascertained or approximated." (Syl.)

(*Brown v. Hadley*, 43 Kan. 267, 23 Pac. 492; *Gas Co. v. Bailey*, 77 Kan. 296, 94 Pac. 258; *Mensing v. Wright*, 86 Kan. 98, 110 Pac. 374.)

The damages which the plaintiffs sought to recover do not come within the rule declared in *States v. Durkin*. The petition did not allege any business, any successful operation, nor any profits being realized. Any increase in the value of the leases on account of a well being drilled on or near them, was wholly a matter of conjecture and speculation. Purchasers for the leases might or might not have been found; but, even if found, there is no way of showing what they would have been willing to pay. The damages claimed by the plaintiffs would have been clearly speculative. 'We quote the language found in 17 C. J. 785:

"In the earlier cases there was a tendency to deny a recovery' for lost profits as an element of damages. The modern rule, however, does not deny a recovery of profits because of the fact that they are profits, but because they are speculative, contingent, or uncertain, and while there are many cases in which they have been denied upon these grounds, the generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequences of the act or omission complained of, and their amount is shown with sufficient certainty, there may be a recovery therefor; but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated. So evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness."

This text is supported by almost three pages of authorities there cited. This court has followed that rule in a number of cases. (*M. K. & T. Rly. Co. v. City of Fort Scott*, 15 Kan. 435; *Harvester Works Co. v. Cummings*, 26 Kan. 367; *Thomas v. Clark*, 66 Kan. 802, 72 Pac. 1102; *Railway Co. v. Thomas*, 70 Kan. 409, 417, 78 Pac. 861; *Dody v. Bank*, 82 Kan. 406, 409, 108 Pac. 804.)

In *Chamberlain v. Parker*, 45 N. Y. 569, 573, it was said:

"It may be conjectured that the lessor had in view some advantage to other property in the vicinity, from the prosecution of the work of ex-

ploration by the defendant. There are no facts shown authorizing this inference, and such a ground of damages, if averred, would be speculative and conjectural, and could furnish no satisfactory basis for a recovery."

The plaintiffs could have recovered the direct damages sustained by them, but none were alleged. The petition did not state a cause of action.

The judgment is affirmed.