No. 23,753.

THE HANSON OIL & GAS COMPANY, *Appellee,* v. GUSS HOWERTON, *Appellant.*

SYLLABUS BY THE COURT.

1. DAMAGES—*Failure to Complete Oil and Gas Well—Measure of Damages.* In an action for damages for failure to complete an oil and gas well it is held that the court properly charged the measure of damages to be the expenditure of the plaintiff under the contract over and above the amount due the defendant had he completed the well.

2. SAME—*Instructions.* An instruction that the measure of damages would be the amount required by the plaintiff for completing the well, was properly refused.

3. SAME. Another instruction requested was substantially given in the general charge; hence there was no error in its refusal.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed May 6, 1922. Affirmed.

*W. T. Roche,* of Clay Center, *M. V. B. Van De Mark,* of Concordia, *Thomas A. Higgins,* and *Sylvester J. Berton,* both of Cushing, Okla., for the appellant.
*Park B. Pulsifer,* and *Clyde L. Short,* both of Concordia, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for damages for failure to complete an oil and gas well. The amended petition alleged that the plain-

Oil & Gas Co. v. Howerton.

tiff corporation was organized for the purpose of securing oil and gas leases near Miltonvale, Kan., and sinking prospect wells so as to ascertain whether or not the territory contained oil or gas in paying quantities, and that a large number of leases covering several thousand acres of land had been procured and the company had expended a great amount of money therefor, such leases providing that unless such wells were sunk before May, 1918, they should be null; that on July 7, 1917, the plaintiff entered into a written contract with the defendant to sink a well on the property covered by one of the leases, to a depth of 2,500 feet, unless Mississippi limestone or other substances preventing further drilling were encountered and unless oil or gas in paying quantities was discovered before the depth of 2,500 feet was reached, the plaintiff to make certain cash payments as the well progressed, amounting in all to $5,000, and assign certain leases. It was alleged that the plaintiff assigned the required leases, which were then of the value of more than $10,000, and paid the defendant on the work more than $4,000; that the defendant assigned the leases to a third party and realized therefrom the sum of more than $10,000; that in May, 1919, without any excuse and without having sunk the well to a depth of more than 1,500 feet and without having encountered any hard substance, and without notice to the plaintiff, the defendant abandoned the well and undertook to wreck it, all to the plaintiff's damage of $14,000.

The defendant denied these allegations generally and alleged that the contract contained a clause providing that the defendant should not be held liable for any delay by reason of matters beyond his control, and averred that shortly after the beginning of the work conditions brought on by the war made it impossible to obtain the necessary casing, whereby the work was abandoned temporarily, about April, 1918; that the plaintiff undertook to procure an injunction in the district court of Clay county against the defendant from moving the casing, and failed. The defendant asked for $10,000 against the plaintiff for its wrongful conduct.

To this answer a reply was filed alleging a fraudulent collusion with the U. S. Supply Company for the purpose of making a pretended sale of the casing and machinery and getting the material out of the state, and wrecking the well, and that the Clay county district court held that the pretended sale was fraudulent and void and made for the purpose of defrauding the plaintiff.

20—111 Kan.

The plaintiff's brief states that the defendant was present at the trial, but offered no evidence.

It seems that Howerton made a contract with a man named Teatsworth to do the work.

G. H. Palmer testified among other things that during the progress of the drilling a total of $4,000 was paid on the contract; that about the time the contract was made with Howerton the leases involved had a market value, and a list of the tracts and values was given, the latter amounting to more than $20,000. The witness Graham had testified that if the plaintiff had taken over the work it would have cost $6,000 less the $1,000 still unpaid on its contract, or $5,000 to complete it.

Upon the conclusion of the testimony, the plaintiff asked leave to amend the petition so as to allege that it would require the expenditure of $5,000 on its part even if it had the right to complete the well, over and above the amount still due Howerton on the contract, which was granted. A continuance asked on that ground was denied and a demurrer was then interposed to the plaintiff's evidence. When called upon for the reason therefor counsel contended that the measure of damages was what would be required to complete the well from the point where the work stopped, less the amount the plaintiff would have owed the defendant for the additional depth had the well been completed. The demurrer was overruled.

The jury were charged that the plaintiff had no right or authority to enter upon the premises and endeavor to sink the remaining thousand feet, unless given permission to do so by the defendant or its assignee, and it was not bound to make any effort so to do.

The measure of damages was said to be the expenditure of the plaintiff under the contract over and above the amount due the defendant had he completed it. The jury found a verdict for the whole amount sued for, $14,000. The defendant appeals and makes thirty-eight specifications of error. However, in his brief, he gives as the principal errors to which he desires to call special attention: Measure of damages, overruling the demurrer, error in giving and refusing instructions, failure of proof and refusal to grant continuance.

The latter is without merit. The proof was abundant. The overruling of the demurrer was proper.

This leaves two questions: The measure of damages and the giving and refusal of instructions.

Oil & Gas Co. v. Howerton.

In discussing the measure of damages at the conclusion of the plaintiff's testimony, the court said that—

"The Court on an objection to the introduction of evidence on the part of the defendant, listened to counsel on both sides at some length and adopted the rule insisted by counsel for the defendant as the measure of damages, plainly stating that before counsel in open court and in the absence of the jury, and the trial was proceeded with on what the court believes to be a thorough understanding of the issues by counsel on both sides."

In his brief the defendant invokes the rule laid down in *Artwein v. Link*, 108 Kan. 393, 195 Pac. 877, which he says the trial court should have followed in charging the jury as to the measure of damages. That rule is that the expected profits from the sale of oil and gas leases on account of oil and gas wells being drilled cannot be recovered as damages from those failing to drill the well. In the opinion it was said that there was nothing in the contract to show that the parties contemplated that loss of profits might be recovered on its breach. It is quite certain that the rule given by the court to the jury was fully as favorable to the defendant as the one laid down in the Artwein case, and whether or not the defendant requested the court to give the very measure of damages which was given, it does not appear that any prejudice to the defendant arose from the instructions on this branch of the case.

The instructions requested and refused were, first: that if the work stopped at the depth of 1,500 feet and the well was left in good condition and the defendant did not interfere or prevent the plaintiff from completing it, the measure of damages would be the amount required by the plaintiff for completing the well to the depth provided for in the contract. This request ignored the consideration paid for the sinking of the well which was without dispute proved to be more than $10,000.

The second was that if the defendant ceased drilling because of reasons beyond his control or was prevented from completing the well by acts of the plaintiff, the latter could not recover. This was given in instruction No. 7, and the refusal of the other was not error.

The remainder of the thirty-eight assignments of error, not being deemed by the defendant to be of sufficient merit to be presented in his brief, need not be further noticed.

Finding no material error, the judgment is affirmed.