No. 37,585

C. R. Nigh, *Appellee*, v. Leon M. Wondra, *Appellant*.

(208 P. 2d 239)

Opinion filed July 9, 1949.

*Charles H. Carpenter,* of Yates Center, argued the cause and was on the briefs for the appellant.

*E. E. Lamb* and *Clyde Hill,* both of Yates Center, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover damages for a breach of contract.

The subject of the controversy is titled "Option Agreement" and reads:

"This agreement entered into this 15th day of August 1947, between C. R. NIGH of Yates Center, Kansas and LEON M. WONDRA of Lincoln, Nebraska wherein it is agreed as follows:

"That the first party, C. R. NIGH, has and is the owner of certain oil and gas leases on a structure known as the Graneros Structure about thirty miles south of Pueblo, Colorado, consisting of about 9200 acres, more or less;

"That in consideration of ten dollars and the subsequent stated covenants, the said first party agrees to transfer all of his right, title, and interest in and

to said leases to the second party, Leon M. Wondra, except 1400 acres which he has chosen, on the condition that:

"1. The second party agrees to drill an oil and gas test well on said structure to a depth of 3400 feet, unless oil or gas in paying quantities is encountered prior thereto or granite or igneous rock is encountered prior thereto.

"2. The second party to commence drilling operation on or before 20th of October, 1947.

"3. The second party, to deliver to the First National Bank, Pueblo, Colorado, a drilling contract together with the moneys necessary to complete the test well, both to be held in escrow by said bank for delivery of the money, to the contractor upon compliance with the drilling contract.

"4. The second party to exercise this option and deposit money and drilling agreement with bank on or before 24th of September, 1947.

"Witness, our hands and seals the day and year first above written."

In substance the petition, which includes the contract by reference, alleges compliance by defendant with paragraphs 3 and 4 of the agreement and respecting performance under paragraphs 1 and 2 charges:

"That pursuant to said contracts Defendant commenced a well on said leases on or about 30 November 1947 and proceeded to drill said well according to the terms of said contract. That said well was drilled to the depth of 563 feet. That said Defendant willfully, intentionally, wantonly, maliciously and fraudulently ceased and abandoned the drilling operations aforesaid on or about 13 December 1947 and thereafter removed or caused to be removed the drilling rig and equipment from said well.

"That Defendant has neglected and refused to complete said drilling operations in accordance with the terms of said contract. That Plaintiff has at all times been ready, willing and able to perform each, every and all of the terms of said contract."

Such pleading then itemizes the damages claimed to have been suffered by plaintiff as a result of defendant's failure to complete the well to the depth required by the agreement and prays for the recovery of both actual and exemplary damages.

Summarized the answer admits execution of the instrument and alleges compliance with each and all of its provisions, denies the well was abandoned under the conditions and circumstances charged in the petition and asserts that on the contrary it was drilled by defendant to an approximate depth of 563 feet where granite or igneous rock was encountered necessitating, and under the terms of the contract permitting, abandonment of the well.

Along with the answer defendant also filed a cross petition seeking recovery of damages from plaintiff but, as will presently be disclosed, its allegations are not involved and hence need not be related.

In his reply plaintiff denies generally each and every allegation and averment of fact to be found in the answer and cross petition.

With issues joined as heretofore outlined the cause came on for trial by a jury. After plaintiff had adduced his evidence defendant demurred thereto upon grounds, first, that it disclosed the parties were operating under an option, and second, plaintiff at the time of the filing of the action was not in a position to perform under the agreement. After some consideration the trial court sustained this demurrer, discharged the jury, and rendered judgment for defendant. Thereafter, and within time plaintiff filed a motion for new trial which the trial court eventually sustained. It then set aside the judgment it had theretofore rendered.

The appeal is from the order granting a new trial but the real and, we might add, only issue defendant seeks to have here reviewed, is that such action resulted in actually overruling his demurrer to plaintiff's evidence which he insists constitutes error requiring a reversal of the trial court's action in sustaining the motion for a new trial and a directed judgment in his favor.

At the outset it can be said defendant is entitled to a review of the issue he thus presents. In *Roddy v. Hill Packing Co.*, 156 Kan. 706, 137 P. 2d 215, we held:

"Where a demurrer to evidence was first sustained and then on a motion for a new trial the original order was set aside and vacated and a new trial granted, such action will be considered as tantamount to an overruling of the demurrer to the evidence and will be so considered on appeal." (Syl. ¶ 1.)

It should, however, be pointed out that while appellant is entitled to a review of the issue to which we have just referred there is nothing about the unusual circumstances which bring it here to detract from the force and effect of the elementary and long established rule. (*Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538; *Langston v. Butler*, 165 Kan. 703, 199 P. 2d 190), that in testing evidence as against a demurrer it is to be given a liberal construction, including the resolving of all doubts against the litigant challenging its sufficiency, and that when so considered if there is any evidence to sustain a cause of action the action of the trial court holding to that effect must be upheld.

Appellant's first and principal contention is that his demurrer to the evidence should have been sustained because the contract between the parties was an option contract which did not bind him in any particular. His position on this point is well illustrated by

the following statement which appears in his brief "We may go so far as to state that under this contract the Defendant could commence the drilling operation and that he could drill 100 feet, or 200 feet or 500 feet, or any other given depth and at any time that he lost faith in his proposition or for any reason wish to withdraw, he could do so without incurring any penalty or liability for Breach of Contract." The fallacy in the contention he thus makes is demonstrated at the very outset of his argument when after asserting the conditions of the contract are clear he concedes that under its terms all he was required to do was to drill the well to a depth of 3,400 feet unless he struck oil or gas in paying quantities or unless he encountered granite or igneous rock was encountered before it was drilled to the depth required by the contract. Thus it appears, at the very outset, that even on appellant's own theory there is a controversial question of fact for the jury's decision. However, we do not propose to base our decision on this point entirely upon the conclusion just stated.

Notwithstanding the concession to which we have just referred appellant insists there is nothing to be found in the instrument which binds him in any way. In support of his position he directs our attention to and quotes from page 243 of the opinion in *Connell v. Kanwa Oil, Inc.*, 165 Kan. 241, 194 P. 2d 950, where there is language to the effect that it is the very essence of an option contract that one party has the choice of concluding or not concluding a proposed transaction while the other party has no choice. Quite true. That is the rule up to a certain point and we adhere to it. However, appellant entirely overlooks the corollary of the rule, equally well-established, which is that once an optionee exercises the privilege accorded him under the terms of an option agreement the agreement itself ripens into a binding contract and thereafter its provisions are mutual and binding upon all the parties thereto. This is not a statement of any new or startling legal doctrine. Indeed, although somewhat differently stated, we recognize the principle on the very same page of the opinion from which appellant quotes where it is said:

"Was the transaction unilateral and therefore unenforceable? The transaction was based on mutual promises. Where the consideration is merely a promise for a promise all parties to the agreement must, of course, be bound thereby to make it enforceable. It is true appellee was not bound to perform. He did, however, perform and thereafter its provisions became mutual and binding. In other words, the promises thereafter ripened into a binding contract. (*Brick Co. v. Bailey*, 76 Kan. 42, 90 Pac. 803.)" (p. 243.)

Other enunciations to the same effect are to be found in *Chadsey v. Condley,* 62 Kan. 853, 62 Pac. 663; *Nieschburg v. Northern,* 101 Kan. 110, 165 Pac. 857. Many more decisions adhering to the same general principle could be cited but are not required. It suffices to say the rule recognized in this jurisdiction is in accord with the great weight of authority and supported by statements to be found in all well-recognized legal treatises and textbooks. See 12 Am. Jur. 526, 531, 538, §§ 27, 37, 45; 17 C. J. S. 451, § 100 (e); 58 C. J. S. 356, 601, §§ 166, 225; 51 C. J. S. 613, § 64; Thornton on Oil and Gas 213 to 222, incl., §§ 120, 121, 122.

Under the foregoing authorities, since it is conceded appellant had exercised his option we have no difficulty, upon the examination of the terms of the contract, in concluding that his claim he was under no obligation to drill a well in accordance with its terms must be rejected. Once that point is reached we have even less difficulty in reaching a decision appellee's evidence does support a cause of action in damages for abandonment of the well under conditions not authorized by the agreement for, whatever the fact may be, the record is replete with evidence which, if believed, supports such a conclusion.

It is next urged that because appellee had assigned the major portion of the leases referred to in the contract to other parties prior to the filing of the action and was himself unable to perform the contract at the time he brought suit against appellant for his breach thereof his evidence failed to establish a cause of action. There might be some merit to this claim if appellee was seeking specific performance of the contract. The short and simple answer to this contention is that this is an action for damages for breach of the contract not for its performance and hence the question whether performance according to its terms is longer possible is of no concern to the person charged with its breach.

Finally appellant insists his demurrer to the evidence should have been sustained because appellee's testimony discloses that under his assignment of the involved leases to other parties he had retained more of an interest in the entire lease block than he would have had if his contract with the appellant had been performed. This contention requires little attention. Matters pertaining to the extent of damages must be determined by proof and at the present stage of the instant proceedings cannot be determined as a matter of law.

For reasons similar to the one last stated we are not disposed to attempt to comply with a suggestion that we should lay down an over-all rule as to the proper measure of damages for violations of contracts of the nature here involved. Consideration of that question must be deferred until it is presented under more propitious circumstances.

Having determined appellee's evidence was sufficient to withstand a demurrer it follows the trial court committed no error in granting a new trial.

The judgment is therefore affirmed.