No. 39,844

George Gartner and Margaret Gartner, *Appellees*, v. Carl Missimer and Bud W. Schroeder, *Appellants*.

(290 P. 2d 827)

Opinion filed December 10, 1955.

*Walter L. McVey, Jr.,* of Independence, argued the cause, and *Walter L. McVey* and *Laurence McVey,* both of Independence, were with him on the briefs for the appellants.

*A. R. Lamb,* of Coffeyville, argued the cause, and *Paul A. Lamb,* of Coffeyville, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This was an action for damages resulting from a breach of contract by failure of defendants to drill an oil and gas well to the Arbuckle lime on the farm of plaintiffs. Judgment was for plaintiffs and defendants have appealed.

The plaintiffs will hereafter be referred to as appellees and the defendants as appellants.

Appellees' petition, appellants' second amended answer, and a reply set out the issues in the case. The facts, briefly stated, were that appellees owned 265 acres of land in Montgomery county and on August 12, 1952, this land was leased to appellants whereby

they agreed to drill one Bartlesville well within sixty days, one additional Bartlesville well within ninety days, one Arbuckle well within six months, and one additional Arbuckle well within one year if production were found in the first Arbuckle well. There were producing Bartlesville wells on all sides of appellees' land and some of them were on the land of appellees which was located across the road to the south. Appellants drilled the first Bartlesville well, which was dry, and the second Bartlesville well, which was sandfracted and pumped for several months. From production on the latter well appellees received a check for $11.12 on November 5, 1952, and another for $18.90 on February 6, 1953. An Arbuckle well was never drilled and as a result the lease was abandoned in June, 1953, but was not released of record until February 3, 1954.

During the trial one witness testified that the Bartlesville sand was found at a depth of 900 feet and the Arbuckle formation would be 375 to 425 feet deeper; cost of drilling a well to the Arbuckle formation would be $7,000 to $7,500. Another witness testified the cost of drilling would be $2.00 per foot to the Bartlesville sand and $7.00 per foot to the Arbuckle. A third witness said it would cost $2.50 to the Bartlesville sand and $7.00 to the Arbuckle. Appellee, George Gartner, testified in his own behalf that had an Arbuckle well been started, the royalty interest would have been about $20.00 per acre.

Appellants filed a demurrer to appellees' evidence on the ground the evidence did not prove damages and that any evidence of damages attempted to be proved was speculative, uncertain, and not capable of proof. This demurrer was overruled.

There was a contention by appellants that appellees did not have good title to the land, but the record before us contained testimony of expert witnesses for appellants which admitted that the title not only was good, but that Sinclair had been running oil from the land for a long time.

Appellants' evidence showed the two Bartlesville wells had been drilled; that a laboratory report indicated the second well was not a commercial producer; they had proceeded with setting and cementing pipe plus refracting, which had cost $14,000 and caused a net loss to appellants of $10,452.47; there had been an Arbuckle test in the vicinity which had resulted in a dry hole, but the record failed to show definitely that there was knowledge of this on behalf of appellees.

There was further testimony by one witness on behalf of appellants that with a small rotary one of the Bartlesville wells could have been drilled down to the Arbuckle formation for $2,000 to $2,500. Another witness, who had drilled an Arbuckle well in the vicinity, stated it would cost $3,000 to $3,500.

There was a conflict between the testimony of appellee George Gartner and that of appellant Carl Missimer. Gartner stated he had written letters requesting appellants to drill three wells, but Missimer testified Gartner had said,

". . . you boys have spent a lot of money down here and you have been awfully nice about it, he said I won't ask you to drill an Arbuckle well because these two wells are low, and we have had the test on the other hundred feet, and I don't believe there would be any production."

Missimer said his memory was hazy but he thought in a conversation he had with Gartner two or three months after the time for drilling the Arbuckle well had expired, Gartner had asked when appellants were going ahead with the drilling. Missimer had asked Gartner if he would execute a new lease, but they agreed a new lease was not necessary.

Testimony of appellant Schroeder was that Gartner had said the Arbuckle situation didn't look good to him, he didn't see much use in drilling an Arbuckle well there; it would be a waste of money; no release in writing was necessary because appellants had kept their word, had tried hard, had spent a lot of money and they could depend on him. Schroeder further testified that the cost of cleaning up the lease and moving out had been included in the cost of the well.

From the record it appears that another witness for appellants, on cross-examination, stated it was his opinion that the limes would not carry oil on the Gartner lease, but that he did not believe it could be determined whether oil would be obtained in the Bartlesville sand without drilling a well.

At the close of all the evidence the trial court refused to give an instruction upon motion of appellants directing the jury that it could find only nominal damages for the alleged failure to drill the Arbuckle well. The trial court instructed the jury and counsel submitted their arguments. Instructions No. 10, 11, 12, and 13, and a statement of appellees' counsel in his closing argument were objected to by appellants. These objections were overruled. Special interrogatories were submitted and appellants objected to the sec-

ond. That was overruled. A motion to set aside the verdict and an answer to a special question, as well as a motion for new trial were filed, argued, and overruled. Judgment was rendered on the verdict of the jury for $3,500. This appeal followed.

The specifications of error were that the trial court erred in overruling appellants' demurrer to appellees' evidence and in not entering judgment for appellants; in overruling appellants' motion for a directed verdict and that only nominal damages could be allowed; in entering judgment for appellees against appellants in the sum of $3,500; in overruling the motion for judgment and to set aside the answer to a special question; in overruling the motion for new trial; in overruling objections by appellants to instructions No. 10, 11, 12, and 13; in failing to give appellants' requested instruction that only nominal damages could be allowed; and in overruling appellants' objection to the statement of appellees' counsel that, "The measure of damages is the cost to find out whether there is oil down there under that land. . . ."

The first question for us to consider is the sufficiency of appellees' evidence to withstand a demurrer. The demurrer in this case was based on the question of damages and not on the usual and general question that the evidence failed to constitute a cause of action. Therefore, we need not go into the general rule except to say that if there is any evidence in support of and favorable to the establishment of appellees' damages, then we consider only that evidence and disregard any that is unfavorable. We must further accept all evidence of damages introduced by appellees as true. (*Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 303, 110 P. 2d 810; *Nigh v. Wondra*, 167 Kan. 701, 703, 208 P. 2d 239; *Tuggle v. Cathers*, 174 Kan. 122, 127, 254 P. 2d 807, and cases therein cited.)

Just what did appellees' evidence show? As previously stated, the Bartlesville sand was found at a depth of 900 feet and there was evidence it would cost $2.00 to $2.50 per foot for drilling to that depth, and the Arbuckle formation was 375 to 425 feet deeper and the cost would be $7.00 per foot for drilling to that depth. In addition to the cost per foot, appellees' evidence further showed that it would cost $7,000 to $7,500 to drill from the surface to the Arbuckle lime. At most a mathematical computation was all that was necessary to ascertain with reasonable certainty what damages appellees suffered as a direct result of appellants' breach of the contract to drill the first well to the Arbuckle lime. Thus a prima facie

case was made and the trial court did not err in overruling the demurrer.

Appellants did not see fit to stand on their demurrer and appeal therefrom but offered evidence, which has been set out in the record to the effect that the surest way to find out if there were oil in the Arbuckle lime was by drilling a well; that with a small rotary rig the first well could be drilled right on down to the Arbuckle lime for $2,000 or $2,500; and there was also evidence by another witness that the first well drilled could be extended from the Bartlesville sand to the Arbuckle lime for $3,000 to $3,500. In *Tuggle v. Cathers,* supra, p. 127, where a similar situation as to evidence was present this court stated that any evidence that a defendant may offer which supplies any lack in the plaintiff's proof will be considered in determining the correctness of the order overruling the demurrer, citing *Lechleitner v. Cummings,* 159 Kan. 171, 152 P. 2d 843; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899. We adhere to this rule.

Appellants' next contention was the trial court erred in not sustaining their motion for a directed verdict directing the jury that it could find only nominal damages. They again raise the proposition that the evidence was speculative and remote so that only nominal damages may be recovered. There are numerous authorities which adhere to this rule. (*Artwein v. Link,* 108 Kan. 393, 396, 195 Pac. 877; *Oil & Gas Co. v. Howerton,* 111 Kan. 304, 307, 206 Pac. 909; *Wyckoff v. Brown,* 135 Kan. 460, 462, 11 P. 2d 718; *Myers v. Shell Petroleum Corp.,* supra; 15 Am. Jur., Damages, §§ 5, 6, 7.) However, the case now under consideration does not have the same facts or circumstances as were involved in the above cases.

The lease was given to appellants in consideration for their drilling a Bartlesville well within sixty days, a second Bartlesville well within ninety days, an Arbuckle well within six months and a second Arbuckle well within one year if there was production from the first Arbuckle well. There was nothing ambiguous about this contract; it required the drilling of at least three wells. Appellants were not excused from drilling the second Bartlesville well if the first Bartlesville well came in dry, nor were they excused from drilling the first Arbuckle well if the two Bartlesville wells were dry holes, but they did not have to drill a second Arbuckle well if the first Arbuckle well was a dry hole. In that event it made no difference whether the two Bartlesville wells were producers or dry holes. The appellants were bound by the contract

to drill a well to the Arbuckle lime and if they breached their contract, they were answerable in damages that were the natural and ordinary consequence of their breach (15 Am. Jur., Damages, § 43) to the appellees who in turn were entitled to have a well drilled to test the Arbuckle lime in and under their land. They did not have to go in and deepen one of the Bartlesville wells or drill from the surface to the Arbuckle formation. The cost of drilling a well, or of completing a well which had been started but later abandoned by the driller has been generally held to be the proper measure of damages. (58 C. J. S., Mines and Minerals, § 226 (b), p. 613; *Fite v. Miller*, 192 La. 229, 187 So. 650, 122 A. L. R. 446, anno. 458.)

This is not a usual situation to be found where an oil and gas lease is involved or where the driller has been hired to drill a well, or wells, to a specified depth. Thus the question of damages here does present an unusual problem. We cannot set up a rule which will govern in all cases similar to the one before us. This case must be determined on its own set of facts and circumstances and we have determined that the appellees had a right, under the contract, to have a well drilled to the Arbuckle lime by appellants, and after appellants started to drill but decided not to continue, they were bound by the contract to complete the well (*Nigh v. Wondra*, 167 Kan. 701, 704, 705, 208 P. 2d 239) or be liable in damages to the appellees for that amount of money it would require to drill a well or complete the well that had been started. (*Fite v. Miller*, supra.) The trial court did not err in refusing to give an instruction directing a verdict by the jury for nominal damages.

The contention of appellants we will next consider is in regard to the trial. court's refusal to grant judgment for appellants notwithstanding the verdict and to set aside the answer to a special question. In view of what has been said it was not error for the trial court to refuse to grant judgment *non obstante veredicto*. The jury had ample evidence, according to this record, from expert witnesses to show the cost of drilling, or extending, pre-existing wells in a locality where the property in question was surrounded by other oil producing properties. When there are facts in the record upon which the jury could have based its verdict, we will not disturb the verdict because of an objection for that reason alone. (*Henderson v. Deckert*, 160 Kan. 386, 393, 162 P. 2d 88; *Will v. Hughes*, 172 Kan. 45, 52, 238 P. 2d 478.)

The trial court did not err in its rulings on instructions, in rendering judgment for appellees, or in overruling the motion for new trial. In view of what has been said herein we think there was no prejudice to appellants when the trial court overruled appellants' objection to a statement made by appellees' counsel in his closing argument.

The judgment is affirmed.