Leona **COOKSON** et al., Plaintiffs-Appellants,

v.

**WESTERN OIL FIELDS, INC.**, a Colorado corporation, Defendant-Appellee.

No. 72–1025.

United States Court of Appeals, Tenth Circuit.

Aug. 11, 1972.

---

W. Luke Chapin, of Chapin & Penny, Medicine Lodge, Kan., for plaintiffs-appellants.

W. D. Masterson, III, of Kilgore & Kilgore, Dallas, Tex. (William L. Oliver, Jr., of Martin, Porter, Pringle, Schell & Fair, Wichita, Kan., on the brief), for defendant-appellee.

Before BREITENSTEIN, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Plaintiffs appeal an adverse decision entered on cross-motions for summary judgment. All facts necessary to resolution of the case appear to have been presented by stipulation. These are summarized as follows:

The controversy arises out of a disagreement as to the meaning of a so-called "Agreement for Purchase and Development of Oil and Gas Leases" executed by all the parties as of August 4, 1965. The contract there made has been carried out and fulfilled by all parties in all respects save one. The single disagreement arises from paragraph FIFTH(b) of the agreement, which reads as follows:

[It is the obligation of defendants]

"(b) To drill and complete at least one (1) well on the 'Sternberger Acreage' during each of the five years included in the primary term of the leases, in accordance with paragraph (a) above, whether or not any of said wells result in production of oil or gas in commercial quantities; and to drill at least one (1) of such five wells on the 'Olen Ownership' leases, designated on Exhibit 'A'; and at least one (1) of such wells on the 'Lloyd Ownership' leases, designated on Exhibit 'A', and at least one (1) of such wells on the 'Louis Ownership' leases, designated on Exhibit 'A'."

Defendant over the term of the agreement drilled a total of six wells, timed thus: first year, three; second year, none; third year, one; fourth year, none; fifth year, two. The geographical distribution mandated by the above paragraph FIFTH(b) has been met.

The parties introduced depositions, letters, and other evidence designed to cast light upon their interpretations of the contract provision in question, and stipulated that the substantive law of Kansas was controlling.

Essentially, plaintiffs claim that they are entitled to damages as a result of the failure of Western to drill wells in the second and fourth years of the agreement; Western maintains that it has substantially performed under the contract and that plaintiffs have waived any right they may have had to a recovery, and have suffered no damage.

The trial court granted Western's motion for summary judgment in a well-reasoned opinion with which we are in substantial agreement. Judge Theis concluded (a) that plaintiffs had suffered no damages; (b) that defendants had substantially performed under the contract, which presumably would take from plaintiffs any right they might otherwise have had to nominal damages should it have been determined upon trial that there had been a technical breach of the contract by defendant, and (c) that plaintiffs had, by their own conduct, waived whatever right they might have had to recovery under any circumstances. As Judge Theis put it:

> To sum up, it is the Court's position that the contract was ambiguous in its terms, in the FIFTH paragraph thereof, but that despite the ambiguity of the words from which the parties draw opposite connotations, the essential and prevailing purpose of the contract was fulfilled as intended by the parties, in that the defendant drilled more than the minimum amount of wells upon all of the acreage as contemplated by the contract, and contributed to the development of all the leased lands, including the three separate ownerships, for oil and gas purposes. In other words, there was substantial and complete performance by the defendant barring any recovery by the plaintiffs. It is further the opinion of the Court that the plaintiffs suffered no calculable or ascertainable damages and their own actions during the life of the contract acted as a waiver by them of any breach they may have thought to have occurred.[1]

The doctrine of substantial performance applies fully to oil and gas contracts (see Summers, Oil and Gas, § 683), and operates to bar recovery for insubstantial or formal breaches arising from the wording of a contract; as we said in Baer Bros. Land & Cattle Co. v. Reed, 197 F.2d 569 (10th Cir. 1952):

> When all of the grievances are considered, separately and together, they present no more than technical variances from the letter of the contract, and courts will not deny enforcement in the face of a showing of substantial performance and in the absence of a detriment. 197 F.2d at 573.

See also 5 Williston on Contracts § 805 (3d ed. 1961); 3A Corbin on Contracts, §§ 700, 713 (1960).

It is apparent here that the alleged breach of the contract could in no way be said to go to the "essence" of the agreement, which was that plaintiffs' lands would be tested for the presence of oil and gas over a period of five years, in such a manner as would allow for orderly development of such resources as were found. The wells were drilled on each of the separate ownerships as specified, and the drilling was complete within the period specified.

However, plaintiffs claim that the Kansas cases establish that, regardless of the defendant's substantial compliance with the contract, damages are to be awarded automatically on a drilling contract when a time is specified within

---

1. See pp. 9–10 of "Decision of the Court on Cross Motions for Summary Judgment", beginning at p. 134 of the record. The waiver referred to is argued by the defendant and felt by the trial court to have arisen out of plaintiffs' actions in accepting delay rentals for all the land during the years in which no wells were drilled, as well as from actions taken by some of the plaintiffs in apparently attempting to cancel certain of the leases and subsequently apparently acquiescing in defendant's continued presence upon the land.

which drilling is to be completed and drilling is not, in fact, completed within that time. Looking to the "one each year" language of paragraph FIFTH(b), *supra,* they say they come within such rule for years two and four. Damages in such an instance, they continue, are to be calculated from the cost of drilling a well to the depth contemplated by the parties. We disagree. To accept these arguments we would have to ignore the substantial merits of the case. Notwithstanding that the wells contracted for have been drilled, appellants would have us adjudge that they are entitled to have two additional wells at no expense to them. We see no evidence that the Supreme Court of Kansas would reach such a strained and unjust conclusion.

Plaintiffs press In re Stannard's Estate, 179 Kan. 394, 295 P.2d 610 (1956) and Gartner v. Missimer, 178 Kan. 566, 290 P.2d 827 (1955) as standing for the proposition outlined. Again we disagree.

*Gartner* involved a situation wherein the defendant failed entirely to drill any well whatsoever to the Arbuckle formation, as required by the agreement, by the time the entire contract terminated. Plaintiff won damages in the amount it would cost to complete a shallower well already drilled on his property to the greater depth of the aforementioned formation. The question was whether the plaintiff was entitled to have his land tested for the presence of oil at the depth of the Arbuckle formation. The court wrote:

> The appellants were bound by the contract to drill a well to the Arbuckle lime and if they breached their contract, they were answerable in damages that were the natural and ordinary consequence of their breach (15 Am.Jur., Damages, § 43) to the appellees *who in turn were entitled to have a well drilled to test the Arbuckle lime in and under their land.*
>
> \*　\*　\*　\*　\*　\*
>
> [W]e have determined that the appellees had a right, under the contract, to have a well drilled to the Arbuckle lime by appellants, and after appellants

started to drill but decided not to continue, they were bound by the contract to complete the well \* \* \* or be liable in damages to the appellees for that amount of money it would require to drill a well or complete the well that had been started.

290 P.2d 831; emphasis supplied.

In *Stannard* defendant failed to drill a required well prior to the expiration of the lease agreement (again). Following such expiration, defendant's executrix contacted plaintiff and offered to drill the well, if plaintiff would advance a new lease on the real estate. The court said that this was insufficient and that plaintiff could have damages in the amount necessary to enable plaintiff to drill such a well, pointing out that

> [h]ad the offer been an unqualified one to drill the well, a situation might have been presented where the claimant could not arbitrarily reject, but that was not the case, [sic] Had the proposal made been accepted, it would have been detrimental to claimant for she would have done no more than exchange an accrued cause of action for another leasing and drilling contract prejudicing her own interests and not giving any more assurance of a well being drilled than she already had.

295 P.2d at 614.

In both of the cited cases, the breach was the failure of the defendant to perform the essence of the contract—the adequate oil exploration—before the time of termination of the agreement. Plaintiffs in those cases were aggrieved in that they had given good consideration to receive information as to whether they had valuable oil and gas deposits, and did not receive that information in return. Therefore, they were entitled to receive that for which they had bargained, or to be put in a position equivalent to their having received it. But in the case at bar, plaintiff has received the information, and received it within the overall time limit established by the contract. In no way would the award of damages in some amount related to the cost of drilling the two wells be related to plaintiffs' position vis-a-vis knowl-

edge as to whether their land contains valuable deposits of oil and gas; the wells have in fact been drilled, and plaintiffs have received that for which they bargained.[2]

Defendant having substantially performed the contract, and plaintiffs having failed to show injury, the judgment of the district court is hereby affirmed.

2. It might be argued that plaintiffs could have profited from the discovery of oil and/or gas on their property in the second year or the fourth year (ignoring the fact that there was no oil to be found), and hence should be awarded damages in the amount of interest for the intervening years between the second and fourth and the fifth, such interest being calculated on the amount of money which they might have realized on producing wells in that period. Again, the statement of the proposition is its refutation, and plaintiffs do not seriously pursue it. Such damages are or would be purely speculative, and such that no court would consider. See, e. g., Myers v. Shell Petroleum Corp., 153 Kan. 287, 110 P.2d 810 (1941).