No. 47,215

C. E. DENMAN, *Appellant,* v. ASPEN DRILLING CO., *Appellee,* and
JOHN VOLOSIN, *Defendant.*

(520 P. 2d 1303)

Opinion filed
April 6, 1974.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the
cause, and *Lee Turner,* of the same firm, was with him on the brief for the
appellant.

*Jerry M. Ward,* of Hampton & Ward, of Great Bend, argued the cause and
was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an action for breach of a contractual obli-
gation to drill the second of two exploratory oil wells in Ness
County, Kansas. A claim in the second count of the petition was
dismissed by plaintiff as shown in the pre-trial order. Therefore,
we are not concerned with this claim of fraud against John Volosin,

president of the Aspen Drilling Company, a corporation. The claim for damages arising from the breach of the drilling agreement was tried to the court and judgment was entered in favor of the defendant, Aspen Drilling Company (Aspen). The trial court found that a drilling agreement was entered into by the parties, that Aspen breached the agreement by failing to drill the second exploratory well but that plaintiff's evidence failed to prove the measure of damages. Plaintiff has appealed.

A few background facts may be helpful. We will continue to refer to C. E. Denman as the plaintiff. Plaintiff put together a block of leases consisting of 1280 acres in Ness County, Kansas. The leases were four-year leases located in unproven "wildcat" territory. In July, 1969, plaintiff and Aspen signed a drilling agreement by which Aspen agreed to purchase the leases and pay plaintiff $4.00 per acre or a total of $5,120.00. In the assignment of these leases plaintiff reserved an overriding royalty whereby in event of production plaintiff was to receive on this royalty one-sixteenth ($\frac{1}{16}$) of the seven-eighths ($\frac{7}{8}$) working interest. The leased acreage was divided into two blocks by the parties to the drilling agreement which blocks will be referred to as "A" and "B". Aspen agreed to drill a test well on each block to test the Mississippi lime formation. Both test wells were to be completed on or before December 31, 1969. Under the agreement Aspen bound itself to pay for the leases and drill the two test wells.

Aspen paid the $5,120.00 for the leases and drilled a dry hole on block "A". It thereafter turned the leases back to plaintiff and failed or refused to drill the second test well. Plaintiff then negotiated a drilling agreement with Thunderbird Drilling Company and assigned these same leases in exchange for an agreement to drill on block "B". Thunderbird refused to give plaintiff an overriding royalty interest. Before the present action was tried Thunderbird drilled a producing well on block "B". The well was six or eight miles from any proven production.

The issues for trial were delineated in a pre-trial conference at which Aspen contended that the customary practice in the oil exploration business gave it the right to tender back the leases and discontinue further drilling, and that, since plaintiff accepted the leases, this terminated any further obligation of Aspen under the drilling contract. If no such custom was allowed to be proven because of the provisions of the contract, Aspen contended in the al-

ternative that the court should reform the drilling contract to conform to the understanding of the parties.

After hearing all evidence introduced at the trial the court made specific findings against the defendant Aspen on these issues. The court found no grounds for reformation, determined that the drilling contract as unambiguous and held that Aspen was bound by the terms of the drilling agreement.

There is evidence in the record to support these findings and no cross-appeal has been taken by Aspen. The defendant Aspen cannot now question these findings on appeal. (See *Gould v. Robinson,* 181 Kan. 66, 70, 71, 309 P. 2d 405; and *Reinecker v. Board of Trustees,* 198 Kan. 715, 722, 426 P. 2d 44.)

The plaintiff on appeal contends, as he did in the court below, that the trial court erred in refusing to allow damages in an amount equal to the cost of drilling the well on block "B". There was evidence introduced to establish the cost of drilling the well was between $18,000.00 and $20,000.00. To support his claim for damages in an amount equal to the cost of drilling a well plaintiff cites *Gartner v. Missimer,* 178 Kan. 566, 290 P. 2d 827, and *In re Estate of Stannard,* 179 Kan. 394, 295 P. 2d 610. In the alternative, plaintiff contends, if he is not entitled to the cost of drilling the well, the court should have allowed him the value of the lost overriding royalty.

There is considerable confusion in the law concerning proof of damages for breach of drilling contracts. The confusion arises from some of the terminology used in the Kansas cases, as well as in the cases of other states. (See cases collected in Anno: 4 A. L. R. 3d 284-313.) It should be understood that the rule as to the measure of damages for breach of contract is the same in drilling contracts as it is in other contracts. In *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.,* 212 Kan. 730, 512 P. 2d 379, the rule is iterated as follows:

". . . The measure of damages recoverable for a breach of contract is limited to such [damages] as may fairly be considered as arising in the usual course of things from the breach itself, or as may reasonably be assumed to have been within the contemplation of the parties as the probable result of such a breach. [Citations omitted.] The evidence allowed to support damages for breach of contract is the best evidence obtainable under the circumstances of the case to show the natural and ordinary consequences of the breach and which will enable the court or the jury to arrive at a reasonable estimate of the loss which resulted. [Citations omitted.]" (p. 738.)

The measure of damages for a breach of contract are those damages which naturally arise from the breach itself or which are reasonably supposed to have been within the contemplation of the parties at the time the contract was made. *(Cain Shoes, Inc. v. Gunn,* 194 Kan. 381, 383, 399 P. 2d 831.)

The confusion in the cases comes from trying to equate the measure of damages with the various determinations of what is the best evidence obtainable under the circumstances of a particular case to show the natural and ordinary consequences of a particular breach. For instance, in *Oil & Gas Co. v. Howerton,* 111 Kan. 304, 206 Pac. 909, this court determined the best evidence to establish the measure of damages flowing from a breach of a drilling contract under the circumstances of that case was evidence which established that plaintiff had expended $4,000.00 in reliance on defendant completing the contract and that plaintiff in further reliance had transferred to the defendant certain other leases which had been sold by defendant for an additional $10,000.00 before the breach occurred. The measure of damages which that evidence tended to establish was the same measure of damages iterated above in *Easton Supply Co., Inc., i. e.,* damages as may fairly be considered as arising in the usual course of things from the breach itself which would enable the court or jury to arrive at a reasonable estimate of the loss which resulted.

In *Artwein v. Link,* 108 Kan. 393, 195 Pac. 877, this court held that evidence of any increase in value of leases during the period a drilling contract was being carried out was mere conjecture and too speculative to prove the measure of damages for a breach of the drilling contract. It was the evidence of which the court disapproved, not the measure of damages. In the *Gartner* and the *Stannard* cases evidence of the cost of drilling a well was held the best evidence obtainable under the facts and circumstances to establish the measure of damages for failure to drill the wells. In *Gartner* we note there were proven wells on all sides of appellee's land and at the time of the trial no well had been drilled thereon. In *Stannard* the drilling agreement covered a forty acre lease in Oklahoma and the question decided was the correctness of the trial court's order striking allegations as to the duty of an injured party to mitigate. The lease had expired and no well was drilled under the *Stannard* lease.

The measure of damages in all these cases was the same, *i. e.,*

the damage which arose naturally from the breach itself. The evidence necessary to establish the measure of damages may be different but the measure of damages remains the same.

So in the present case we must ask ourselves if the evidence introduced to establish the cost of drilling a well is the best evidence obtainable under the circumstances of this case to show the natural and ordinary consequences of the breach and to enable the court to arrive at a reasonable estimate of the loss which resulted. (See *Gartner v. Missimer,* supra; *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.,* supra.)

The answer is obviously no, for the plaintiff did get the oil well drilled on block "B" by accepting a return of the leases from Aspen and by obtaining a new drilling contract from Thunderbird Drilling Company in exchange for the leases. Plaintiff did receive, as a result of his efforts to mitigate damages, all that he contracted to receive from Aspen except the overriding royalty on this acreage. Therefore, the trial court did not err in holding that evidence of the cost of drilling a well was not the best evidence obtainable, under the circumstances of this case, to show the natural and ordinary consequences of defendant's breach.

The plaintiff next contends that he should have been awarded damages for the loss of the overriding royalty which he sacrificed in order to obtain the drilling contract from Thunderbird Drilling Company. Under the principles of law set forth above, evidence of the value of the royalty interest would appear to be proper to establish the measure of damages which flowed from the breach. However, in order for evidence to be sufficient to warrant recovery of compensatory damages there must be some reasonable basis for computation which will enable a court or jury to arrive at an approximate estimate thereof. *(Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 519 P. 2d 667. See also *Artwein v. Link,* supra, and *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, Syl. ¶ 7, 110 P. 2d 810.)

There was evidence in the record that the Thunderbird well had an initial production of 80 barrels. There was no evidence, however, as to how many barrels the well would be allowed to produce under state regulation or how long the well might be expected to produce. There was no evidence of the market price of oil. A petroleum geologist, who was acquainted with this particular area, testified that production in this area came from

small pools which varied so much in potential production that it was impossible for him to estimate the potential of the Thunderbird well. He testified that all proven production from which well potential could be figured was over six miles away, was coming from different production zones and could not be considered comparable. There was no evidence of the market value of the overriding royalty at the time the drilling contract was negotiated, assuming such interests were being bought and sold in the market place.

An oil operator doing business in this neighborhood was called as *an expert witness by plaintiff*. On cross-examination by defendant's attorney he testified as follows:

"Q. Just one question, you have testified concerning your experience with oil production in this area?

"A. Yes, sir.

"Q. And is it your opinion that the estimate of well production is speculative and conjecture as to what a certain well will make?

"A. You mean the recoverable oil?

"Q. Yes.

"A. Very speculative.

"Q. And it can be making eighty or ninety barrels a day today and ten barrels tomorrow and maybe nothing the next day?

"A. It has often happened."

As previously stated there must be some reasonable basis for computation which will enable the court or jury to arrive at an approximate estimate of compensatory damages. We can find no evidence in the record which would establish a value for the overriding royalty lost by plaintiff because of the breach.

In summary we hold the evidence of the cost of drilling a well would not establish the measure of damages for breach of the drilling contract under the facts and circumstances of the present case and that the evidence introduced at the trial was insufficient to establish the value of the overriding royalty interest lost by plaintiff as a result of the breach.

Accordingly, the judgment is affirmed.