No. 47,404

L. B. Fisher, *Appellee*, v. Tomlinson Oil Co., Inc., *Appellants*.

(527 P. 2d 999)

Opinion filed November 2, 1974.

*Allyn M. McGinnis*, of El Dorado, argued the cause, and *Louis W. Cates*, of Wichita, was with him on the brief for the appellant.

*J. B. McKay*, of McKay and McKay, of El Dorado, argued the cause, and *James B. McKay, Jr.*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This action is brought to recover damages for breach of a contract to drill an oil well. Essential facts are not in dispute. On August 16, 1971, the Union Gas System, Inc., and Field C. Benton, hereafter collectively referred to as Union Gas, owned oil and gas leases known as the Glasscock leases which covered two quarter sections of land in Elk County. On that date Union Gas entered into an agreement with L. B. Fisher, the plaintiff herein, to assign to Fisher the oil rights under said leases subject to a reservation of an undivided one-sixteenth of a seven-eights overriding royalty. It was agreed that the assignment was to be escrowed and was to be delivered to Fisher when a producing oil well was obtained. The agreement further provided that Fisher should commence drilling operations for an oil test on or before August 16, 1972, and continue to a depth sufficient to test the Mississippi limestone, commonly found at from 1900 to 2000 feet, unless oil was found in paying quantities at a lesser depth or impenetrable substances were encountered at a lesser depth; that on completion of a producing oil well the escrow agent should deliver the assignment to Fisher; that should the first test be a dry hole, Union Gas

would extend the agreement an additional year; that if no production was obtained on or before August 16, 1972, or during the extension period, the assignment was to be returned to Union Gas; and that Fisher should have the right to assign the agreement in whole or in part.

Pursuant to the foregoing agreement Union Gas executed an assignment of the Glasscock leases to Fisher and deposited the same with the escrow holder.

Conversations were thereafter had between Mr. Fisher and Mr. Robert J. Gill, vice president of the Tomlinson Oil Co., Inc. (hereinafter called defendant or Tomlinson) with respect to an assignment to Tomlinson of the Union Gas contract and the leases covered thereby. The discussions culminated in an agreement between the two parties which was evidenced by a letter dated October 27, 1971, addressed to Mr. Fisher by Mr. Gill on Tomlinson's behalf, reciting that Fisher was to execute an assignment of the interests referred to in the Union Gas contract and deliver the same to the escrow holder. In return, Tomlinson agreed to drill the leases before August 16, 1972, and if oil was found to return to Mr. Fisher or his assigns a one-fourth working interest in the leases after all expenses of drilling, testing, etc., were paid. Fisher manifested his acceptance of the terms set out by Mr. Gill in the letter by attaching his signature under date of 12/27/71. Terms of the agreement were substantially reiterated in a letter from Fisher to Gill dated February 17, 1972, and Gill, by a notation thereon dated March 8, 1972, acknowledged that the letter correctly expressed the agreement. Drilling was not commenced by Tomlinson prior to August 16, 1972. To the contrary, Mr. Gill advised Mr. Fisher by phone on August 11 that Tomlinson did not desire to drill the well and wished to be relieved from its obligation. Fisher refused to release Tomlinson and advised the company he would hold it liable for damages.

The present action was filed October 3, 1972. Interrogatories were submitted thereafter, as well as requests for admissions, and answers were supplied. A pretrial conference was later held at which time both parties moved for summary judgment on the basis there were no contested issues of fact. Judgment was entered for plaintiff in the amount of $8500, this being within the amount required to drill a well, as was stipulated by Tomlinson. The defendant has appealed, alleging that the cost of drilling a well was an improper measure of damages and, consequently, summary judgment was premature.

The points are interrelated, centering around the basic issue of what measure of damages should be applied to Tomlinson's breach of its agreement with Fisher.

Questions regarding the measure of damages for breach of a drilling contract have come before this court on a number of occasions. Our latest expression is found in *Denman v. Aspen Drilling Co.,* 214 Kan. 402, 520 P. 2d 1303, where Justice Fromme, speaking for the court, said:

"There is considerable confusion in the law concerning proof of damages for breach of drilling contracts. The confusion arises from some of the terminology used in the Kansas cases, as well as in the cases of other states. (See cases collected in Anno: 4 A. L. R. 3d 284-313.) It should be understood that the rule as to the measure of damages for breach of contract is the same in drilling contracts as it is in other contracts. . . ." (p. 404.)

After reviewing prior decisions of this court dealing with damages arising out of broken drilling agreements, Justice Fromme went on to say:

"The measure of damages in all these cases was the same, *i. e.,* the damage which arose naturally from the breach itself. The evidence necessary to establish the measure of damages may be different but the measure of damages remains the same.

"So in the present case we must ask ourselves if the evidence introduced to establish the cost of drilling a well is the best evidence obtainable under the circumstances of this case to show the natural and ordinary consequences of the breach and to enable the court to arrive at a reasonable estimate of the loss which resulted. . . ." (pp. 405, 406.)

Under the particular circumstances present in *Denman,* we held that the cost of drilling a well was not the best evidence obtainable to establish the natural and ordinary consequences of the breach. The facts in that case disclosed that Denman held two blocks of leases which he assigned to the Aspen Company, reserving an overriding royalty; that Aspen, which had agreed to drill a well on each of the two blocks, refused to drill the second well after the first had come in dry, and turned the leases back to Denman who thereupon negotiated a drilling agreement with Thunderbird Drilling Company, containing no reservation of royalty; that Thunderbird proceeded to drill a well on land covered by the second block of leases, and struck oil. Denman sued for the cost of drilling a well. In a case such as that, opined this court, evidence of the value of the lost royalty interest would appear to be proper to establish the ordinary and natural consequences of the breach, not the cost of drilling a well.

In the present case the circumstances are different; sufficiently different, we believe, to justify the trial court in accepting the costs of drilling as the best evidence available to measure damages, and in entering judgment on that basis. In so doing the court followed our decision in *Gartner v. Missimer,* 178 Kan. 566, 290 P. 2d 827, where we said:

"The lease was given to appellants in consideration for their drilling a Bartlesville well within sixty days, a second Bartlesville well within ninety days, an Arbuckle well within six months and a second Arbuckle well within one year if there was production from the first Arbuckle well. There was nothing ambiguous about this contract; it required the drilling of at least three wells. Appellants were not excused from drilling the second Bartlesville well if the first Bartlesville well came in dry, nor were they excused from drilling the first Arbuckle well if the two Bartlesville wells were dry holes, but they did not have to drill a second Arbuckle well if the first Arbuckle well was a dry hole. In that event it made no difference whether the two Bartlesville wells were producers or dry holes. The appellants were bound by the contract to drill a well to the Arbuckle lime and if they breached their contract, they were answerable in damages that were the natural and ordinary consequence of their breach (15 Am. Jur., Damages, § 43) to the appellees who in turn were entitled to have a well drilled to test the Arbuckle lime in and under their land. . . . The cost of drilling a well, or of completing a well which had been started but later abandoned by the driller has been generally held to be the proper measure of damages. (58 C. J. S., Mines and Minerals, § 226 (*b*), p. 613; *Fite v. Miller,* 192 La. 229, 187 So. 650, 122 A. L. R. 446, anno. 458.)" (pp. 570, 571.)

The similarity of the circumstances revealed in this case and in *Gartner* is quite marked. In *Gartner,* as here, the acreage under lease was in close proximity to producing wells; in *Gartner,* as here, no well was subsequently drilled on the leased acreage; in *Gartner,* as here, the evidence going to damages related to the cost of drilling, there being testimony in *Gartner,* and a stipulation in this case.

This case differs from *Denman* in that here, unlike the situation in *Denman,* the Glasscock leases were not re-negotiated and no well was subsequently drilled on that acreage. Here also, quite unlike *Denman,* we have no evidence going to the value of an overriding royalty interest which could be used as a measure of damages.

We believe the similarities and the differences we have noted distinguish the instant action from *Denman,* bringing this case within the rationale of *Gartner.* The rule expressed in *Gartner* finds support in the language of two subsequent decisions; *In re Estate of Stannard,* 179 Kan. 394, 295 P. 2d 610, and *Cookson v. Western Oil Fields, Inc.,* 465 F. 2d 460. In the *Cookson* case, the federal

court of appeals, although holding that the lessee had substantially complied with the terms of its drilling contract, commented on the *Gartner* and *Stannard* cases in this wise:

"In both of the cited cases, [*Gartner* and *Stannard*] the breach was the failure of the defendant to perform the essence of the contract—the adequate oil exploration—before the time of termination of the agreement. Plaintiffs in those cases were aggrieved in that they had given good consideration to receive information as to whether they had valuable oil and gas deposits, and did not receive that information in return. Therefore, they were entitled to receive that for which they had bargained, or to be put in a position equivalent to their having received it. . . ." (p. 463.)

The rule espoused by this court in *Gartner* seems to be in accord with the generally prevailing view in this country. In an annotation contained in 4 A. L. R. 3d, Drilling Contract—Damages, § 5, p. 290, the text recites:

"The cost of sinking the well contracted for, or of completing one partially sunk if the defendant has partially performed, has been adopted by a number of courts as the general measure of damages for breach of a contract to drill an oil or gas well."

Cases from a substantial number of jurisdictions are cited in support of this textual statement.

The strong thrust of Tomlinson's discontent with the summary judgment entered in plaintiff's favor is simply this: that Fisher sustained no damage from Tomlinson's breach of contract and that Tomlinson was precluded from making any showing to that effect. During a wordy colloquy which occurred at the pretrial hearing the defendant informed the trial court that it wished to present the testimony of certain geologists to the effect the Glasscock leases would not produce oil and a test well would turn out to be dry, making Fisher's overriding royalty interest valueless. For this reason, Tomlinson argues, Fisher was not damaged and the summary judgment entered in his favor was premature.

We think the situation is not quite as Tomlinson would depict it. For example, the lease which Union Gas assigned to Fisher would have been extended for an additional year had a well been drilled, and the acreage would thus have been available for further exploration. Equally as important, Fisher was entitled to the information for which he had bargained, that is, whether there were oil deposits under the land covered by the leases—or at least he was entitled, as was said in *Cookson*, "to be placed in a position equivalent to [his] having received it." It is generally recognized throughout

oil and gas producing areas that oil is where you find it, and the surest way to find out whether oil is present is to drill for it. This is exactly what the defendant refused to do despite his contractual obligation.

In the *Gartner* case, which went to the jury, we held that the trial court did not err in refusing to give an instruction directing a verdict for nominal damages. We are of the opinion that nominal damages would not have been appropriate in this case and that the trial court did not err in applying the *Gartner* rule as to damages and in entering judgment for the stipulated cost of drilling a well.

The judgment is affirmed.