**Hubert M. LaTEMPLE, Jr.,
Plaintiff-Appellee,**

v.

**Raymond D. WAMSLEY, President, Garden City Community Junior College, et al., Defendants-Appellants.**

No. 75–1991.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 19, 1976.

Decided Feb. 14, 1977.

Rehearing Denied March 23, 1977.

Lelyn J. Braun of Braun & Nyswonger, Garden City, Kan., for plaintiff-appellee.

Jim Lawing, Wichita, Kan., and Ward E. Loyd, Garden City, Kan., for defendants-appellants.

Before SETH and HOLLOWAY, Circuit Judges, and CHILSON,* Senior United States District Judge.

CHILSON, District Judge.

## LIABILITY

This diversity action was instituted by the plaintiff-appellee to recover damages from the defendants-appellants for an alleged breach of a written contract whereby the defendants as Trustees of the Garden City Community Junior College employed the plaintiff to teach speech and theatre courses and direct dramatic activities for a term of nine months commencing on August 24, 1970, for a consideration of $9568, payable in twelve equal installments. (Exhibit 1).

Previously, the college had adopted a policy manual, Section 17 of which states:

"Section 17. *The Continuing Contract*

"The contract of employment of an instructor shall continue in full force and effect during the good behavior and efficient and competent service rendered by the instructor. The contract of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract is served by the board of trustees on or before the fifteenth day of March, or the instructor has given written notice to the President on or before the fifteenth day of April that he does not desire continuation of said contract.

"The board of trustees, upon the recommendation of the President, may consider

---

* of the District of Colorado, sitting by designtion.

an instructor for discharge or termination of contract for any of the following causes: Immoral character, conduct unbecoming an instructor, insubordination, inefficiency, incompetency, physical unfitness, or failure to comply with reasonable requirements of the board of trustees as may be prescribed to show normal improvement and evidence of professional training.

"In the event that an instructor is being considered for discharge or termination of his employment contract, he shall be given a warning and a specific statement in writing of defects or reasons for the proposed discharge or termination of contract. Thus, he will have an opportunity to show improvement.

"Following this procedure, if it becomes apparent that an instructor's contract will be terminated, he shall be served a written notice by the board of trustees on or before the fifteenth day of March that his contract will terminate at the close of the academic year and will not be in effect for the succeeding school year.

"Instructors desiring a hearing before the board of trustees must file a request for same with the President within a fifteen day period after receipt of notice."

The trial court held as a matter of law that the plaintiff's contractual rights included the rights provided by Section 17 as well as those rights set forth in the written contract of employment. (Exhibit 1). (Jury Instruction No. 12). That ruling by the trial court is uncontested on appeal.

The Court by its jury instruction No. 13 instructed the jury in pertinent parts as follows:

"(b) By the provisions of Paragraph 2 of Section 17 of the Policy Manual, the Board of Trustees limited its right to terminate an employment contract to the specific grounds set out in that paragraph, i. e., insubordination, insufficiency, etc., and a termination for any reason other than those specified would constitute a breach of the contract rights of plaintiff;

"(c) In the event that plaintiff was being considered for termination of his employment contract, the Board of Trustees agreed to give him a warning and a specific statement in writing of defects or reasons for the proposed termination, in order to give plaintiff an opportunity to show improvement. A failure to give warning and such specific statement in writing prior to termination, would be a breach of plaintiff's contract rights under Section 17.

.     .     .     .     .

"Thus—the factual issues which remain for your determination are whether or not the defendants, acting in their official capacities, breached the agreements set out in (b) and (c) above—that is—whether or not plaintiff's employment contract was terminated for one or more of the causes set out in Paragraph 2 of Section 17; (Exhibit 2) and whether or not the plaintiff was given the warning described in Paragraph 3 of Section 17. (Exhibit 2)"

The evidence discloses dissatisfaction on the part of the college administration with plaintiff's conduct and by letter dated January 29, 1971, the President of the college advised plaintiff as follows:

"Dear Mr. LaTemple:

"There have been some questions referred to me regarding future planning within the Drama Department, and some concern as to the number and calibre of performances to date. We realize that certain adjustments need to be made when moving to a new community and a new position, and it is difficult to make rapid changes in institution policy to satisfy our particular desires or interest. I feel that you might have moved in areas of change from our accepted procedure without consideration of fellow educators within the Fine Arts Department and the college in general.

"I am sure that we must take a good look at change and make necessary adjust-

ments if we are to really progress and improve, but we must remember that not all people will accept new ideas if they are not fully informed and brought along with our changing procedure or policy. "I suggest that you make an effort to improve your relationship and attitude toward your fellow educators within the department and, in some instances, the people in our community. I have heard only· rumors regarding your feelings about the people in Western Kansas, but I don't care to hear rumors which make our people appear inferior.

"This letter is for the purpose of identifying areas of concern and asking that every effort be made immediately to improve your relationship and general attitude toward the college program and the community. I was happy for the opportunity to discuss the problems with you Friday morning, January 29, 1970.

"Your teaching load for the second semester indicates some interest in your field, but the future growth will depend upon proper motivation and your overall general attitude as well as quality instruction.

"Sincerely,
/S/ L.C. Crouch
"L.C. CROUCH
"President"
(Exhibit 5)

On March 10, 1971, defendants notified plaintiff as follows:

"Dear Mr. LaTemple:

"This letter shall serve as written notice that your contract of employment with the Board of Trustees of The Garden City Community Junior College will terminate at the close of this academic year. You will not be offered a contract for the succeeding school year 1971–72.

"Should you desire a hearing before the board of trustees, please advise and file a written request with President Raymond Wamsley within fifteen days after receipt of this notice.

"Sincerely yours,
/S/ John G. Collins

"Vice Chairman
"Board of Trustees"
(Exhibit 6)

The plaintiff requested a hearing before the board. The request was granted and the hearing was held on April 28, 1971, with no changes in the board's action to terminate plaintiff's employment contract.

The factual questions submitted by the trial court to the jury on the question of liability were

"whether or not plaintiff's employment contract was terminated for one or more of the causes set out in Paragraph 2 of Section 17; (Exhibit 2) and whether or not the plaintiff was given the warning described in the Paragraph 3 of Section 17."

The jury's verdict for the plaintiff is in effect a finding by the jury that the defendants, in terminating plaintiff's contract, did not comply with the provisions of paragraphs 2 or 3 of Section 17, or both.

We recognize that under Kansas law the decisions of the appropriate authorities relating to employment of teachers are not generally reviewable on the merits in the absence of fraud or bad faith. See *Hamann v. Crouch,* 211 Kan. 852, 508 P.2d 968 (1973); *Morris v. School Dist.,* 139 Kan. 268, 30 P.2d 1094 (1934). In this case, however, the trial court correctly found that the defendants had bound the college by contract to obligations additional to those usually owed to teachers. It therefore became a question for the jury as to whether the college had complied with its freely undertaken contractual obligations. We find the submission of these questions to the jury was not clearly erroneous and that the evidence is sufficient to sustain the jury's findings on the question of liability.

## DAMAGES

The jury awarded plaintiff damages in the amount of $47,500.00. The amount of the award is without support in law or the evidence and should be set aside.

The measure of damages for a breach of contract are those damages which

naturally arise from the breach itself or which are reasonably supposed to have been within the contemplation of the parties at the time the contract was made. *Denman v. Aspen Drilling Co.*, 214 Kan. 402, 520 P.2d 1303, 1306 (1974); *Phillips & Easton Sup. Co. v. Eleanor International Inc.*, 212 Kan. 730, 512 P.2d p. 379 (1973). We apply that rule to the facts of this case.

■ The written contract of employment was for one school year (nine months beginning August 24, 1970, but Section 17 of the policy manual provides:

"The contract of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract is served by the Board of Trustees on or before the 15th day of March or the instructor has given written notice to the President on or before the 15th day of April that he does not desire continuation of said contract."

Section 17 clearly contemplates a contract of employment continuing from year to year but terminable by either party upon notice. If the prescribed notice is not given, or the notice is improperly given, the employee is entitled to a contract for the succeeding year and his discharge prior thereto is a breach of the contract.

The measure of damages is the salary the plaintiff would have received the next school year had his employment not been terminated.

"Where the contract of employment provides for termination thereon on the giving of a specified notice, the value of the contract constitutes the measure of damage for breach by wrongful discharge. Under such a contract a discharge without the required notice has the effect, with respect to damages for the breach, of terminating the contract as of the earliest time if notice had been given. Hence, where the contract provides for its continuance from year to year subject to termination as of the end of any year on the giving of a specified notice, an employee discharged during a year without having been given the required notice

is entitled to recover damages for the term of a year." 56 C.J.S. Master and Servant § 58, p. 467.

The salary fixed by the contract of employment is $9568.00, payable in twelve equal monthly installments. We have carefully reviewed the evidence bearing on the question of damages and we find no special facts or circumstances justifying the application of a different measure of damages in this case.

The evidence bearing on damages is summarized below.

After the school year was completed in 1971, plaintiff went to Austin, Texas, where he considered entering graduate school for work on a Ph.D. Because of emotional problems, he did not enter graduate school and returned to Rochester, New York, his former residence, for a few weeks. He placed his application for a teaching position with school placement agencies and sent out letters attempting to obtain a teaching position. He got one contract from a school in Daytona, Florida, but he was not employed. In August 1971, he leased a motel in Daytona Beach, Florida, and operated it for approximately eight months but it was a "financial disaster." In March 1973, he obtained a position as a substitute teacher in a high school in Rochester, New York, and earned $3,700.00. His only other income in the last two years has been $600.00 per month in Veterans Administration total disability payments. The disability rating began in 1952 or 1953 at 10–30% disability. His present rating is 70% disability and he is rated as totally disabled because of unemployability. He has from time to time received therapy and treatment through the Veterans Administration both before going to Garden City and after he left.

The damage award by the jury in this case is hereby set aside and this action is hereby remanded to the trial court for the entry of judgment in favor of the plaintiff and against the defendants in the amount of $9568, together with any interest thereon which may properly be assessed under Kansas law and for the plaintiff's taxable costs.